CASE 27—PETITION ORDINARY—APRIL 20.

## Gaar, &c. v. Louisville Banking Company.

APPEAL FROM JEFFERSON COURT OF COMMON PLEAS.

1. INDORSEMENT IN BLANK AND DELIVERY OF A BILL pass the title, and the holder suing thereon and alleging title in himself may recover, unless his title is denied by plea, when it may be necessary to fill up the indorsement in order to furnish evidence to overcome the denial.

    It is the indorsement and delivery that operate to pass the title.

2. A BILL OF EXCHANGE is a written order or request by one person to another for the payment of a specific sum of money absolutely and at all events.

3. CERTAINTY OF AMOUNT—A REASONABLE ATTORNEY'S FEE.—An agreement between the parties that if the bill should be sued upon, a reasonable attorney's fee should also be paid by the obligors to the holder does not thereby make the amount due thereon uncertain, so as to deprive the paper of its negotiability.

4. WHERE IT WAS VERBALLY AGREED BETWEEN THE PAYEE AND THE OBLIGORS IN A BILL THAT BEFORE IT SHOULD BE OBLIGATORY he

should obtain the signatures of all of them to an agreement to become bound as between themselves as if they were joint sureties on a note, they were held bound, although all their names are not signed to the agreement; but if any of them were injured by reason of such failure, they could set up their damages by way of counterclaim in a suit on the bill by the payee. (Hubble v. Murphy, 1 Duv. 278.)

5. THE DIFFERENCE BETWEEN USURY AND A PENALTY. — When the debtor, by the terms of his contract, can avoid the payment of a larger by paying a smaller sum at an earlier day, the contract is not usurious, but the difference between the two sums is a penalty. But when he can not discharge his contract according to its terms at maturity by the payment of the debt and lawful interest, the contract is usurious. (Blydenburg on Usury, 39; Cullen v. How, 8 Mass. 257; Moore v. Hilton, 1 Dev. Eq. 429; Tyler on Usury, 97; Jordan v. Lewis, 2 Stewart, 426.)

6. A note or bill for a specific sum with legal interest, and providing that the debtor shall pay an attorney's fee, if sued on, is not usurious. (Thomasson v. Townsend, 10 Bush, 114.)

7. A CROSS-APPEAL IS ALLOWED only in behalf of the appellee against the appellant, and not by an appellee against a co-appellee. (Smith v. Northern Bank of Kentucky, 1 Met. 575.)

RUSSELL & HELM, . . . . ⎫
BARR, GOODLOE & HUMPHREY, ⎬ . . . For Appellants,

CITED

Story on Bills, section 8.
Chitty on Bills, 147, 153, 154, 160.
General Statutes, p. 564, sec. 4.
Revised Statutes, chap. 22, sec. 11.
1 Acts of 1871, page 62, section 5.
7 Bush, 680, Downing v. Bacon.
1 Parsons on Notes and Bills, 3–7, 37.
2 Blackstone, 467.
1 Cow. 707, Atkinson v. Mauks.
4 B. and Ad. 619, Bolton v. Dougdale.
2 Stark, 375, Smith v. Nightingale.
4 M. & W. 168, Arey v. Fearnsides.
5 Hill, 416, Luff v. Pope.
7 Hill, 577, Luff v. Pope.
4 Met. 99, Knott's adm'r v. Hogan.
4 Mon. 547, Jones, &c. v. Overstreet.
2 Cam. 205, Leeds et al. v. Lancashire.

4 Cam. 127, Hartley v. Wilkinson.
4 Bar. and Ald. 36, Fairbank v. Bell.
1 Met. 316, Kelly & Co. v. Smith & Shotwell.
9 Dana, 417, Cope v. Daniel.
6 Mon. 542, Butler v. Suddeth.
6 Bush, 107, McKegney, &c. v. Widekind & Co.
10 A. & E. 98, Davis v. Wilkinson.
20 Pick. 133, Cushman v. Haynes.
26 Com. Law, 193, Kingston v. Long, &c.
10 Bush, 114, Thomasson v. Townsend.

A. BARNETT, . . . . . . . . . . . For Appellee,

CITED

Act of Jan. 24, 1867, Sess. Acts, p. 99.
Charter of Appellee, pp. 12, 13.
General Statutes, chap. 60, art. 2, sec. 4.
General Statutes, chap. 22, secs. 15 and 18.
1 Parsons on Notes and Bills, 188.
1 Wallace, 604, Spain v. Hamilton.
35 Ind. 104, Stoneman v. Pyle.
21 How. 414, Canal Co. v. Vallette.
11 Ind. 334.     22 Barbour, 119.
10 Ohio, 376.     7 Blatchford, 475.
13 Ill. 577.    3 Ind. 454.    8 Ind. 27.

JUDGE COFER DELIVERED THE OPINION OF THE COURT.

This suit was brought in the Louisville Chancery Court by appellee against appellants and others on this instrument:

"LOUISVILLE, KY., January 27th, 1873.

"Four months after date pay to the order of J. M. Bryant ninety-four hundred and twenty and four hundredths dollars, value received, negotiable and payable at the office of the Louisville Banking Company.

$9,420.04.      (Signed)      W. H. BEYNROTH."

Addressed to Morris, Southwick & Co., Louisville, Ky.; accepted by them, and indorsed by J. M. Bryant, H. S. Gaar, P. G. Kelsey, and J. T. Morris. On the back of that paper this agreement appears:

"The drawers, indorsers, and acceptors of this bill agree to pay a reasonable attorney's fee to any holder thereof, if the same shall hereafter be sued upon, and also pay interest at the rate of ten per cent per annum after maturity until paid, and all are equally bound as drawers, indorsers, as if this bill were in the form of a joint note.

(Signed)          MORRIS, SOUTHWICK & CO.,

W. H. BEYNROTH,

J. M. BRYANT,

H. S. GAAR."

The petition contained three paragraphs.

The first paragraph set forth the principal writing, and declared on it as a bill of exchange.

In the second paragraph it was alleged that at the time the bank purchased the bill Bryant, Beynroth, and Gaar indorsed to it, as collateral security, three notes executed by Morris, Southwick & Co. to them, dated January 28, 1873, the first two being for the sum of $5,000 each, due in eighteen months, and the third for $6,000, due in twenty-four months, and all secured by mortgage on real estate and bearing interest from date at the rate of ten per cent per annum. It was also alleged that Morris, Southwick & Co. had no defense to the notes. The bank prayed for judgment enforcing its lien on the notes, and for a sale thereof in satisfaction of the bill.

In the third paragraph, the writing indorsed on the back of the bill was set up, and judgment was prayed thereon for ten per cent interest on the amount of the bill from its maturity until paid, and for five hundred dollars as an attorney's fee.

Gaar demurred to the second paragraph upon the ground that it did not state facts constituting a cause of action. The demurrer was sustained; and the bank failing to plead further in that behalf, the second paragraph was dismissed and the cause transferred to the Jefferson Court of Common Pleas,

where both Gaar and Bryant demurred to the petition; and their demurrer having been overruled they answered, and a trial was had, which resulted in a verdict and judgment against them for the amount of the bill, with interest thereon at ten per cent per annum from maturity until paid, and from that judgment they have appealed; and the bank prosecutes a cross-appeal to reverse the judgment of the chancery court dismissing the second paragraph of the petition.

1. All the indorsements on the bill are in blank, and the appellants insist that the bank failed to manifest a right to recover upon it. It is alleged in the petition that the bank purchased it of J. T. Morris, the last indorser thereon, who "assigned, indorsed, and delivered the same to the plaintiff, who is now the owner and holder thereof." These allegations are not denied, and it does not therefore seem to be material whether the indorsements were filled up or not.

When the holder of a bill indorses his name upon it and delivers it, such indorsement and delivery pass the title, and when the holder sues upon it and alleges title in himself he is entitled to recover unless his title is denied by plea, when it may be necessary to fill up the indorsements in order to furnish evidence to overcome the denial. It is the indorsement of the name of the holder and delivery of the bill, and not the filling up of the indorsement, that operate to pass the title.

There is nothing in the case of Cope v. Daniel (9 Dana, 415), cited by counsel, at all inconsistent with this view.

The only question in that case was whether the holder of a bill indorsed in blank could lawfully fill up the indorsement with an assignment to himself after the death of the indorser, and the court held that he could. The court quote Chitty on Bills, p. 134, where he says, "It is *now*, however, considered that a blank indorsement is sufficient of *itself* to transfer the right of action to any *bona fide* holder;" and say "this last seems to us

to be the true doctrine as now understood and applied." It is also said in the same case that "until the blank be filled by a formal assignment to the holder he can not recover, *though he may sue* on the bill in his own name; because the indorser's name does not *per se necessarily* import an assignment to him or the character and effect of that which may have been intended. This is not, however, because he has no *right* as the holder, but only because he has failed to furnish sufficient *evidence* of his right, and which evidence the blank indorsement and the delivery of the bill to him gave him the power to complete by filling the blank in such a manner as to *prove* specifically and certainly the *nature* of the right passed to him by the indorser."

In the old form of declaring on a bill the various indorsements were not required to be set out, and the declaration being taken *pro confesso* did not furnish the necessary evidence of the plaintiff's title.

But under our system of pleading, which requires the facts to be stated, the unanswered allegation that the bill has been indorsed by the payee, and that the plaintiff is the holder and owner thereof, proves "specifically and certainly the nature of the right passed to him by the indorser," and dispenses with the necessity for any evidence whatever, and entitles the plaintiff to recover.

If his ownership be denied, then it would be necessary to fill the blank in order to furnish that evidence which is otherwise furnished by his unanswered allegation of ownership.

2. The ground of the demurrer is, that although the writing declared on in the first paragraph when taken by itself is a bill of exchange, the writing indorsed on the back thereof, in which the signers agreed to pay an attorney's fee in case the bill should be sued on, destroyed its negotiability. This argument is based on the fact that the amount of the attorney's fee agreed to be paid was not ascertained, and hence it is contended that the bill was for an uncertain amount.

A bill of exchange has been defined to be a written order or request by one person to another for the payment of a sum of money, absolutely, and at all events; and as bills are designed to take the place and perform the office of money, there must be no chance of mistake as to the amount of money of which they thus take the place. On this point therefore the adjudged cases are quite stringent. The sum must be stated definitely, and must not be connected with any indefinite or uncertain sum. (1 Parsons on Notes and Bills, 37; Story on Bills, secs. 42–45.)

It has accordingly been held that an instrument in the form of a note promising to pay a specified sum at a designated place on a named day, "*current rate* of *exchange* added," was not a note, because the current rate of exchange was unascertained and uncertain. (Atkinson v. Mauks, 1 Cow. 707.) And in Davis v. Wilkinson (10 A. & E. 98) it was held that the following instrument was not a note: "I agree to pay to D. £695 at four installments," the first on, etc., "being £200," and so on, specifying three others amounting in the aggregate to £600. "The remaining £95 to go as a set-off for an order of R. to T., and the remainder of his debt owing from D. to him."

In Cushman v. Haynes (20 Pick. 133) it was held that an acceptance for an uncertain amount—to wit, "the balance of goods not then sold"—was not negotiable.

Other cases to the same effect might be cited, but it is deemed unnecessary, as the rule of the law merchant undoubtedly is that it is an indispensable quality of a note or bill that it shall be for a definite sum in order that it may be negotiable.

But it by no means follows from this conclusion that the negotiability of the paper sued on was destroyed by the agreement indorsed thereon that the parties would pay an attorney's fee if the debt had to be sued for.

In the cases cited, and others referred to by counsel, the amount to be paid at the maturity of the note or bill was un-

certain, and it was that fact which destroyed their negotiability; but in this case the amount to be paid at maturity was fixed and certain, and it was only in the event that the bill was not paid when due that any uncertainty arose.

The reason for the rule that the amount to be paid must be fixed and certain is that the paper is to become a substitute for money, and this it can not be unless it can be ascertained from it exactly how much money it represents. As long therefore as it remains a substitute for money the amount which it entitles the holder to demand must be fixed and certain; but when it is past due it ceases to have that peculiar quality denominated negotiability, or to perform the office of money; and hence any thing which only renders its amount uncertain after it has ceased to be a substitute for money, but which in no wise affected it until after it had performed its office, can not prevent its becoming negotiable paper. Until the paper in question matured the amount due upon it was fixed and certain, and it might therefore take the place of money; when it became overdue, that fact put an end to its career, and then for the first time the amount to which the holder was entitled became uncertain, or rather might be made uncertain by bringing an action on the bill against the parties who signed the agreement indorsed thereon.

We are therefore of the opinion that the demurrer was properly overruled.

3. The third error complained of is that the court erred in refusing leave to file amended answers tendered by appellants.

Neither of the rejected amendments presented a defense to the action, nor was either admissible as perfecting any defense set up or attempted to be set up in the original answers.

In the first of these proposed amendments it was averred in substance that F. G. Kelsey, upon the faith of whose indorsement the defendants indorsed the bill, indorsed it under a contract with the bank that he should not be charged thereon

as an indorser, which contract or agreement was concealed from these defendants.

It appears both from the averments of these amendments and from the bill, that Kelsey indorsed the bill after Gaar and Bryant; and as they could in no event look to him for indemnity or contribution in case they paid the bill, they were not prejudiced by the agreement alleged to have been made.

It was averred in the second amendment offered and rejected that it was agreed between the appellants and the bank that, before the bill should become obligatory upon them, all the indorsers and the drawer and acceptors should sign the agreement indorsed on the bill, and thus become bound, as between themselves, as if they were joint sureties on a promissory note, and that the bank had failed to secure the signature of Kelsey to that agreement.

These facts constituted no defense to the action on the bill. (Hubble v. Murphy, 1 Duvall, 278.)

It is not alleged in those amendments that Kelsey was solvent either at the date or maturity of the bill, or at the time of tendering the answer; and conceding, as we are inclined to do, that if Kelsey had been alleged to be solvent the breach of such an agreement would have given the appellants a cause of action against the bank which might have been made available as a counter-claim, we think the court properly rejected the amendment, because unless Kelsey was solvent no injury resulted to the appellants from the failure of the bank to obtain his signature to the agreement.

4. The act of March 14, 1871, which made it lawful to contract in writing for any rate of interest not exceeding ten per cent, was in force when the bill sued on was made. A part of the 5th section of that act, which is nearly the same as section 4 of article 2 of chapter 60 of the General Statutes, is in these words: "If any rate of interest exceeding the rate authorized by the first section of this act (ten per cent) shall

be charged the whole interest shall be forfeited." It is claimed by the appellants that as the bill was to bear ten per cent interest after maturity, and in addition thereto the bank took their obligation to pay an attorney's fee in the event suit was brought on the bill, the bank contracted for a rate of interest exceeding ten per cent, and thereby forfeited all right to any interest, and that the judgment for interest is therefore erroneous.

Waiving the question whether the repeal of the statute then in force operated to relieve the appellant from the forfeiture denounced by that section, we are of the opinion no such forfeiture was incurred.

This objection to the judgment raises the question whether the agreement to pay an attorney's fee can be regarded as an agreement to pay a rate of interest exceeding ten per cent. Interest is the premium allowed by law for the use of money, while usury is the taking of more for the use of money than the law allows.

If therefore the agreement to pay an attorney's fee in case the bill had to be sued on can be regarded as the taking or contracting for more than ten per cent for the use of the money loaned on the bill it is usurious, and the bank thereby forfeited its right to any interest.

But we do not regard such a contract as an agreement to pay usury; it was an agreement to pay a penalty in default of payment of principal and lawful interest at maturity, or before suit. Whenever the debtor, by the terms of his contract, can avoid the payment of a larger by the payment of a smaller sum at an earlier day the contract is not usurious, but the difference between the two sums is a penalty. (Blydenburg on Usury, p. 39; Cullen v. How, 8 Mass. 257; Moore v. Hilton, 1 Dev. Eq. 429; Tyler on Usury, 97; Jordan v. Lewis, 2 Stewart, 426.)

But when he can not discharge his contract according to

its terms at maturity by the payment of the debt and lawful interest the contract is usurious.

In this case the contract might have been discharged according to its terms at any time before suit was commenced by the payment of the principal and lawful interest, and it results therefore that the forfeiture denounced by the statute was not incurred.

We have been referred by counsel to the case of Thomasson v. Townsend (10 Bush, 114), as holding that such an agreement is usurious. Speaking of the agreement to pay an attorney's fee in the event the mortgage was foreclosed, the court said, "It is in the nature of a penalty to be imposed in case the mortgagor should fail to pay off and satisfy the mortgage debt before judgment." It was also said that "such contracts are in their *nature usurious*." But when the whole opinion is considered together it is clear that the court did not regard the contract as usurious in fact or in law, but as a penalty merely; for it is said that, while if the debtor resists its enforcement, the court will relieve against it as a penalty; yet " when a judgment is rendered by default in a case like this, upon a petition setting out the contract in accordance with the rules of pleading, the defendant will be without remedy. This is the extent of the rule intimated in the opinion in Smith v. Kahn & Will (MS. Opinion, November 7, 1871). In this case the defendant was in court resisting the enforcement of the *penalty*."

The court not only treated it as a penalty and called it by that name, but said if judgment was allowed to go by default upon appropriate pleading the defendant would be without remedy, which can never be the case when the record shows that judgment has been rendered for usury. There is therefore nothing in the opinion in that case inconsistent with the conclusion reached in this case, but on the contrary that opinion is an authority in support of it.

5. The only remaining question is on the cross-appeal of the bank against Gaar & Bryant, in which it is sought to reverse the judgment of the chancery court sustaining a demurrer to the second paragraph of the petition seeking a judgment to sell the notes pledged by Beynroth, Gaar, and Bryant to the bank as collateral security for the bill.

Beynroth is interested in the decision of that question, and is a necessary party to the appeal; and, as he is not an appellant, and a cross-appeal can only be prosecuted against appellants, the cross-appeal must be dismissed for want of necessary parties. (Section 895, Civil Code; Smith v. Northern Bank, 1 Met. 575.)

Wherefore the judgment is *affirmed* on the original appeal, and the cross-appeal is dismissed.

11b 191
96  429

11bu 191
e110 490

11bu191
e117 116

11bu 191
121  245

CASE 28—PETITION EQUITY—APRIL 21.