## Carsey & Co. v. Swan & James.

(Decided November 8, 1912.)

### Appeal from Calloway Circuit Court.

1. Bills and Notes—Joint Obligor—Indemnity Against Loss Arising Upon Advances—Contract to Prize Tobacco.—Appellant having contracted with appellees to advance money to tobacco growers, who had employed appellees to prize their tobacco, with the understanding that appellees would make drafts upon appellant for the sums advanced, accompanied by the notes of the borrowers signed or endorsed by appellees, the liability of the latter upon the drafts and notes is that of a joint obligor or an undertaking to indemnify appellant against loss arising from advances they induced it to make upon the tobacco of farmers which they had contracted to prize.

2. Same—Dishonest Transactions of Partner.—The fact that James involved the firm of Swan and James by dishonest transactions, did not relieve Swan of liability to appellant. Appellant cannot be made to suffer loss by reason of Swan's misplaced confidence in James, or the latter's violation thereof.

3. Same—Attorney's Fee—In Nature of Penalty Against Public Policy.—Appellant, cannot, however, recover of appellees a fee for the services of its attorney in this case, although so stipulated in the notes sued on and recoverable under the laws of Tennessee, as it has been repeatedly held in this jurisdiction that a provision in a note, as to the payment of an attorney's fee for bringing suit thereon, is in the nature of a penalty and against the public policy of the state.

HOLLAND & RYAN for appellants.

E. P. PHILLIPS, BARNETT & WELLS and A. J. G. WELLS for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

This litigation grew out of certain transactions between appellants, Carsey & Co., and the firm of Swan & James, composed of the appellees, J. B. Swan and G. C. James. It appears from the record that the Planters

Protective Association of Kentucky and Tennessee, secures from farmers throughout the dark tobacco belt, pledges to have their tobacco prized and sold in and through the association, which makes contracts with different prizers to prize the association tobacco at certain fixed fees; also with warehouse companies to sell, at agreed charges, the association tobacco after it is prized, but the farmer has the right to select his own prizer and warehouseman from among those who have a contract with the association.

The warehouse and prizer's fees are deducted after the sale of the tobacco and the net proceeds paid the farmer. By the rules of the Planters Protective Association, the prizer is not permitted to make advances to farmers on their tobacco, but money may be advanced the latter by the various association warehouses, after the delivery of the tobacco to the prizer, and it seems to be also permissible for the warehouses to advance small sums to the farmers, even before the tobacco is delivered to the prizer.

Such advancements as are received by the farmers are made by the warehouse companies through the prizers; the farmer being required to execute his note for the amount advanced him and therein pledge his tobacco for its payment and agree that the tobacco shall be shipped to and sold by the warehouse company making the advancement. The prizer, through whom these advances are made, is required to sign or endorse and become bound on the note given by the farmer for the money advanced him by the warehouse company. In addition, the prizer obtains for the farmer the moneys advanced him by making a draft upon the warehouse company therefor, payable to the farmer and the draft is accepted and paid by the warehouse company upon its presentation, accompanied by the farmer's note, signed or endorsed by the prizer.

The appellee, J. B. Swan, had a contract with the Planters Protective Association to prize, at Lynn Grove, Kentucky, during the year 1912, such tobacco grown in the year 1911, as might be taken to him by the farmers of that vicinity. He took G. C. James in with him as a partner and agreed to pay him for his services one-half the fees earned by the firm for the prizing of tobacco. The firm received but little tobacco for prizing, but busied themselves in soliciting custom and securing advances for various farmers upon their tobacco. By

contract with Carsey & Company, warehousemen of Clarksville, Tennessee, Swan & James arranged with them to advance money to the farmers whose tobacco they expected to prize, and received as advances to several farmers upon drafts they drew upon Carsey & Company and notes of farmers they forwarded them, various sums, amounting in the aggregate to $637. These transactions were conducted wholly by G. C. James, acting for Swan & James and the farmers as well.

After these advances were made and before any of the tobacco upon which Carsey & Company had advanced these moneys, had been prized by Swan & James, or shipped to Carsey & Company, Swan discovered that James was dishonest and he thereupon dismissed him as a partner, following which the firm of Swan & James was sued in this action upon the several notes which had been executed for various moneys advanced farmers by Carsey & Company; the firm name of Swan & James appearing on each of these notes as obligors.

Swan & James filed separate answers; that of the former traversing the averments of the petition and pleading non est factum; and that of the latter confessing the allegations of the petition. On the hearing, a trial by jury having been waived, judgment was rendered in appellants' behalf against G. C. James for the aggregate amount of the notes sued on, but their petition was dismissed as to the appellee, Swan, of which, and the refusal of the circuit court to grant them a new trial, they complain; hence this appeal.

The judgment of the trial court, as shown by its separate conclusions of law and of fact, was based upon the ground that the firm of Swan & James was a surety on the notes sued on and that as the firm name was signed to the notes in that capacity by the wife of James, under mere verbal authority from James, section 482, Kentucky Statutes, relieved the firm of any liability as surety. That section provides:

"No person shall be bound as the surety of another by the act of an agent, unless the authority of the agent is in writing, signed by the principal, or if the principal do not write his name, then by his sign or mark made in the presence of at least one credible attesting witness."

We think the court erred in reaching the conclusion that the firm of Swan & James was a mere surety in the notes. It is apparent from the evidence that under the

contract between the firm of Swan & James and appellants, the former became guarantor of the payment of all notes received by appellants for moneys advanced upon tobacco. Swan & James alone knew whether the tobacco was in existence, for they were to prize and ship it to appellants and it was not unreasonable, under the circumstances, that the latter should require the firm to stand between them and any loss that might result. Moreover, Swan & James made drafts upon appellants for the moneys thus advanced and upon these drafts the money was paid the borrowers. Each note was attached to its corresponding draft and thus went into the hands of the appellants when the draft was paid by them. The amount of each draft was charged by appellant to the account of Swan & James. The notes did not discharge the drafts, they furnished additional evidence of the contract between the parties and contained a pledge of the tobacco owned by the farmer, making the note security therefor. It was contemplated that the notes, as well as the fees of the warehousemen and prizers, would be paid out of the proceeds of the tobacco when sold, and, if not, that they would be paid by the makers. The liability of Swan & James upon the drafts and notes, therefore, was that of a joint obligor, or an undertaking to indemnify appellants against loss arising from the advances they made at the firm's request, upon the tobacco of farmers which the firm was to prize and ship them; and if such was the contract it was not necessary that Mrs. James, the bookkeeper or agent of the firm, should have been authorized in writing to sign the name of the firm to the drafts or notes. In other words, the liability of the firm of Swan & James, and that of Swan as a member of the firm, was never that of a surety. Although appellants first sued upon the notes alone, they later, by amended petition set out the contract in detail, and filed as exhibits the drafts and correspondence, which with the notes, previously filed with the original petition, furnished full evidence of the contract in its entirety. As amended, the petition stated a cause of action and the proof introduced in support thereof authorized a recovery against the appellee, Swan, as well as James, for the liability of the firm of Swan & James and each member thereof, is upon the contract as originally made by them with appellants; the drafts and notes being but additional evidence of such liability. The fact that James, involved the firm of Swan & James,

by dishonest transactions, did not relieve Swan of liability to appellants. If two of the notes executed to the latter through the instrumentality of James were upon fictitious persons, or persons who owned no tobacco, as appellants advanced the money upon them on drafts drawn by James in the firm's name of Swan & James, Swan's liability therefor as a member of the firm cannot be questioned. Having received James as a partner and trusted him to conduct the business of the firm, Swan is estopped to deny liability for his acts as a member of the firm performed in the course of its business. Appellants cannot be made to suffer by reason of his misplaced confidence in James, or the latter's violation thereof.

Appellants cannot, however, recover of appellee the fee claimed for services performed by their attorney in bringing this action, although the notes sued on contain an agreement to that effect, and such a fee is recoverable under the laws of the State of Tennessee. We have repeatedly held that a provision in a note, as to the payment of an attorney's fee for bringing suit thereon is in the nature of a penalty, against public policy, and not enforcible in this jurisdiction. Rilling v. Thompson, 12 Bush, 310; Thomasson v. Townsend, 10 Bush, 114; Gaar v. Lou. Banking Co., 11 Bush, 188. Nor can there be any recovery by appellants of the warehouse fees claimed, as the tobacco was not shipped to or sold by them.

For the reasons indicated, the judgment is reversed as to the appellee, Swan, and cause remanded for a new trial consistent with the opinion.