## Ohio Valley Banking & Trust Company v. Great Southern Fire Insurance Company.

(Decided September 25, 1917.)

### Appeal from Henderson Circuit Court.

1. Bills and Notes—Negotiability and Transfer.—A paper, negotiable under the Negotiable Instruments Act at its inception, remains negotiable until it is restrictively endorsed or discharged by payment or otherwise; but such negotiability exists after the maturity of the instrument only for the purpose of transmitting title to the holder, as prescribed by such act, the transferee in such case taking it subject to all defenses that could be made to it by the maker or endorsers.

2. Bills and Notes—Negotiability and Transfer.—One who has possession after maturity of a negotiable instrument 'made such under the Negotiable Intruments Act, the last endorsement being in blank, is such a holder as will entitle him to maintain suit to collect it, and it is not necessary to entitle him to recover that he should fill in the blank above the last endorsement showing the transfer to be made to him.

3. Bills and Notes—Negotiability and Transfer.—Where a negotiable note was sold after maturity under an endorsement by the bank, signed officially by the cashier, it is a sufficient endorsement to transmit the title to the note, unless the authority of the cashier was restricted, and the transferee had knowledge of such restriction.

4. Bills and Notes—Negotiability and Transfer—Ratification.—Where a cashier credited to his bank the consideration for a note transferred after maturity, which proceeds the bank used and appropriated, this constituted ratification by the bank of the act of the cashier in transferring the note, even though he had no authority to do so at the time.

5. Bills and Notes—Negotiability and Transfer.—If a note is transferred for a valuable and sufficient consideration by the cashier of a bank, the proceeds of which are appropriated by the bank, and it afterwards collects the note from the maker who had no notice of the transfer, the bank is liable to the holder, although such transfer may have been made by the cashier without authority.

YEAMAN & YEAMAN and MONTGOMERY MERRITT for appellant.

J. W. HENSON and POWELL TAYLOR for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On October 10, 1910, A. H. Harding executed his note to P. H. Canary, by which he agreed to pay the latter,

on January 1, 1911, the sum of $7,500.00, the note being negotiable and payable at the Planters State Bank (hereafter referred to as the bank), it being a banking corporation doing business in the city of Henderson, Kentucky. The note was executed in part payment for a tract of land and was a lien upon it. Before the maturity of the note Canary in due course negotiated and transferred it to the bank, and it held the note until March 11, 1913, at which time it was purchased for the consideration of its face value by appellee (plaintiff), and was transferred and delivered to it by this endorsement: "The Planters State Bank, Henderson, Ky., Ingram Crockett, Cas."

Some time during the year 1914 it was discovered that the bank was in a dilapidated financial condition, growing out of the peculations and dishonest practices of its cashier, Crockett, whereupon it transferred all of its assets to the appellant (defendant), Ohio Valley Banking & Trust Company, it agreeing as part consideration of such transfer to assume and become liable for all of the obligations of the bank. The latter institution continued to pay to plaintiff the interest on the note up to or about the time it ceased to do business, which payments were made by the check of its cashier, Crockett. The defendant declining to recognize the plaintiff as the owner of the note, and refusing to pay it, as did also the other parties thereto, this suit was filed in the Henderson circuit court by plaintiff against appellant, Harding, and Canary, seeking a recovery thereon, and upon trial judgment was rendered in favor of plaintiff against defendant, Ohio Valley Banking & Trust Company, but the petition was dismissed as to Harding and Canary. To reverse the judgment against it, the trust company prosecutes this appeal.

The defendant in its answer denied that the note had ever been endorsed, assigned or transferred, for a valuable consideration or otherwise, to the plaintiff, but alleged that if it had ever been assigned to plaintiff that the assignment was without the knowledge or authority of the bank, which received no consideration therefor, and that it was done by the cashier without authority, and defendant claimed to still be the owner of the note. Other paragraphs of its answer are made a cross-petition against Harding, seeking to recover from him, not only the note sued on, but also a number of others which it

is claimed he executed through a series of years to the bank, and all of which he still owed.

The substance of the answer of Harding to both the petition of plaintiff and the cross-petition of defendant (appellant), is that he had fully paid to the bank all of the various obligations sued on, and that he was therefore not liable on any of them. Appropriate pleadings made up the issues presented by the petition and cross-petition resulting in the judgment in favor of Harding heretofore mentioned, and from which no one prosecutes an appeal.

Against the judgment appealed from it is first urged that the plaintiff, having obtained the note after maturity under a blank endorsement, it is not entitled to maintain this action to recover thereon, and in support of this position we are referred to the two cases of Cope v. Daniel, 9 Dana 415, and Gaar v. Louisville Banking Company, 11 Bush 180, but an examination of those cases shows that the question being considered by the court in each of them was one of evidence only, i. e., whether when issue was made by defensive plea as to ownership under a blank endorsement the endorsement alone would be sufficient to constitute a *prima facie* right in the holder to recover on the paper, and the same seems to be true in the still later case of Barrett & Wilhoyte v. Ft. Pitt National Bank of Pittsburgh, Pa., 19 Ky. Law Reporter 1611. It is conceded in those cases that if at any time before judgment the holder had filled the blank above the endorsement so as to show the transfer of the note to him, his *prima facie* right to recover would have been complete, notwithstanding such right may have been put in issue by the pleadings. It is not intimated that a plaintiff would be denied the right to recover upon proof heard showing him to be the *bona fide* holder and the one to whom the paper was transferred by the blank endorsement for valuable consideration. Moreover, the Cope case, which seems to have been the foundation for the other two, was decided long before the adoption of our Civil Code of Practice, section 18 of which requires that "Every action must be prosecuted in the name of the real parties in interest, except as is provided in section 21," the exception having no relevancy to this character of case. But, aside from this, our statute commonly known as the Negotiable Instruments Act greatly modified, altered and changed the common law rules with reference to commercial paper. It not only defines

negotiable paper, but prescribes the rights of the makers and endorsers thereof and other parties thereto. The note here involved at its inception admittedly comes within the definition of negotiable paper as defined by that act, and section 47 thereof says: "An instrument negotiable in its origin continues to be negotiable until it has been restrictively endorsed or discharged by payment or otherwise." But such negotiable qualities possessed by the paper after maturity affect and apply only to the method of transferring and transmitting title to the paper, and does not relieve it from any defense in a suit by the transferee which the maker and prior endorsers might have against it. This statement of the law as to the continued negotiability of the paper was held by this court in the case of Weittlauffer v. Baxter, &c., 137 Ky. 371.

The Negotiable Instruments Act recognizes two distinct character of holders of negotiable instruments. One is "a holder in due course" (section 52 of the act), and the other is a holder not in due course, but in the sense of owner or possessor of the paper. The first character of holder is one who takes the paper before its maturity free from defenses of which he had no notice, and the second one includes those who may become the owner of the paper at any time before payment and after maturity. Such holder may maintain suit upon the paper in his own name, as is provided by section 51 of the act. That the plaintiff is such holder as will entitle it to maintain this action in its own name under that section is made manifest by the provisions of subdivision 5 of section 9, and those of section 190 of the act. A holder by the latter section is "the payee or endorsee of a bill or note, who is in possession of it, or the bearer thereof"; and the bearer of such an instrument is one who is in possession of it "which is payable to bearer," and the instrument is payable to bearer, as prescribed by sub-section 5 of section 9, "when the only or last endorsement is an endorsement in blank." The note in question being negotiable, as we have seen, and endorsed in blank by the last endorser (the Planters State Bank), became payable to bearer, and plaintiff being in possession of it fixed its status as a holder who, under section 51, *supra,* can maintain the suit. Callahan v. Louisville Dry Goods Company, 140 Ky. 712.

This brings us to the merits of the case as between plaintiff and defendant. Several collateral questions are

discussed, such as the want of authority in the bank's cashier to transfer the note sued on, his fraud, and intimated bad faith on the part of plaintiff, but we find nothing in the record to substantiate the latter, nor are we convinced of the want of authority of the cashier to make the transfer. But, be these matters as they may, the proof is conclusive and nowhere contradicted that the plaintiff paid full value for the note at the time of the transfer, and which consideration was deposited upon the books of the bank to its credit, and, so far as the record discloses, was appropriated and used by it. If, indeed, the cashier, because of the paper being overdue, had no binding authority to transfer the note (a proposition to which we do not agree), the appropriation of the consideration paid for the note was a ratification of the cashier's act. If, for any reason, either of fact or law, the bank could defend upon the ground that the note was transferred after maturity (none of which do we find from the record), it would yet be liable to the plaintiff because of having collected the note from the maker after it had been transferred to the plaintiff.

We therefore conclude that the court properly rendered the judgment appealed from, and which judgment is now hereby affirmed.