## James, et al. v. Smith, et al.

(Decided October 31, 1924.)

### Appeal from Letcher Circuit Court.

1. Appeal and Error—Cross-Appeal Does Not Lie Against Coappellee.—Cross-appeal does not lie against coappellee and can be effective only to review adverse judgment in favor of part or all of appellants.

2. Vendor and Purchaser—Finding that Plaintiffs Purchased with Actual Knowledge of Interest of Another in Land Held Erroneous.—In suit to establish rights in title bonds, finding of chancellor that plaintiffs at time they purchased their interest had actual knowledge of outstanding interest of a defendant held erroneous under evidence.

W. G. DEARING for appellants.

R. MONROE FIELDS for appellee Hughes.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing the judgment on the original appeal and dismissing without prejudice the cross-appeal of appellee, W. R. Marsee.

Some time in 1907 John E. Golden procured to be executed to himself individually a number of written op-

tions or title bonds by which he agreed to purchase or was given the right to purchase the lands of the owners who executed the writings and which in the aggregate was something near 24,000 acres and lying and being in various counties of eastern Kentucky, including Letcher county. The exact nature of those writings or their purport is unknown to us since none of them was introduced at the trial nor are they or any of them copied in the record, though it appears that they were all acknowledged and recorded in the respective counties where the land, which was the subject matter of the contract, was situated.

On January 2, 1909, Golden executed a writing signed by himself alone which he styled an "article and agreement," in which he is described as the first party and appellee, W. R. Hughes, as the second party, and in which he recited that Hughes was an equally interested party in the various contracts taken by him with himself and that Hughes had advanced the larger part, if not all, of the money that was expended in procuring them and in making payments thereon; and agreed therein that Hughes was a jointly interested party with him. Another paragraph purported to mortgage or place in lien Golden's half interest in the contracts to Hughes in order to secure the latter for such advancements. That writing was acknowledged September 23, 1913, and recorded October 16 the same year. It is also claimed by appellee, Marsee, that he purchased from Golden all of the latter's contracts on March 11, 1911, which he says was evidenced by a writing of that date and recorded on July 25, 1913. However, he does not introduce and make a part of this record that contract, though by a supplemental record there was brought to this court a purported written assignment by Golden and wife to Marsee of "all and singular my rights in and title to the lands embraced by said title bonds, investing him with all the benefits I have under and to same and which lie in Letcher county, Kentucky, to-wit." Then follows a list of thirteen title bonds with the acreage covered by them, but the assignment includes no description of any of the referred to contracts. That writing from Golden and wife to Marsee was executed in March, 1913, and recorded on September 26 of the same year.

On the 27th day of May, 1912, Golden and wife, in consideration of $700.00 cash then paid, sold to appellants and plaintiffs below, F. P. James and J. R. Curry, a one-

third undivided interest in certain of the bonds therein named and specified and which contract was duly acknowledged on the same day and recorded in the Letcher county clerk's office on June 20 of the same year. On the 9th day of July, 1912, in consideration of $1,250.00 cash paid Golden, and wife sold a one-sixth undivided interest in and to the same bonds covered by the James and Curry contract to Howard Curry, and that contract or deed was acknowledged on the next day after its execution and recorded on the 21st day of September, the same year. But we do not find as included in the list of bonds sold by the execution of either of the last two mentioned writings or deeds, any land of Dixon Smith or of J. J. Lewis, both of whose contracts were and are for lands located in Letcher county. So that, whatever interest, as between the conflicting claimants, James and his co-partners the two Currys, obtained by the last two mentioned writings, it is manifest that neither of them covers or includes the Dixon Smith contract or the J. J. Lewis contract.

James and the two Currys, as joint owners, filed this and a number of other equity actions in the Letcher circuit court against the owners of the various tracts of land covered by the bonds which they claimed to have purchased, and against Marsee and Hughes seeking to establish plaintiffs' rights as superior to the claims of either Hughes or Marsee, and to enforce specific performance of the bonds as against the owners of the various tracts of land. The court on final submission, after proof taken, reserved the question as to the right to enforce specific performance against the owners of the land and by consent of parties adjudged only the issues as between the conflicting claimants, the plaintiffs as to a one-half undivided interest in the land claimed by them, Marsee and Hughes, and held that plaintiffs at the time of their purchasing and obtaining the deeds or writings evidencing their title, had actual notice of the alleged contract between Golden and Marsee made and executed as claimed by the latter in 1911, although not recorded for more than a year after plaintiffs obtained their interest. It was further adjudged that the writing executed to Hughes in 1909 only purported to acknowledge him as the owner of a one-half interest in the title bonds of Golden and in addition gave him a mortgage on the latter's half interest to secure him in his advancements made to Golden, and that Hughes was thereby the owner of a one-half undivided interest in the lands involved, and since

plaintiffs, as the court found, purchased their interest with notice of Marsee's alleged interest, they obtained nothing as against him and he was adjudged the other half interest with Hughes in and to the land in controversy. From that judgment plaintiffs prosecute this appeal, and Marsee has obtained in this court a cross-appeal, which under numerous opinions of this court does not lie against Hughes, a co-appellee with Marsee, and can be effective only to review an adverse judgment in favor of a part or all of the appellants. Miller's Appellate Practice, sec. 114; Smith v. Northern Bank, 1 Met. 575; Gaar v. Louisville Banking Co., 11 Bush 180; McKay v. Mayes, 17 Ky. L. R. 827, 32 S. W. 606; Marion Nat. Bank v. Phillips, 18 Ky. L. R. 159, 35 S. W. 910; Asher v. Helton, 31 Ky. L. R. 9, 101 S. W. 350; Matney v. Edmonds, 179 Ky. 243, 200 S. W. 365, and City of Henderson v. Redman, 185 Ky. 146.

If, therefore, Marsee was dissatisfied with the judgment in so far as it gave to Hughes a one-half undivided interest in the land with himself, he should prosecute an original appeal in order to correct that judgment, since, under the authorities, *supra,* he cannot obtain that relief by his cross-appeal in this action against his co-appellee, Hughes. The only question, therefore, presented is whether the court correctly found that plaintiffs had notice of Marsee's alleged purchase in 1911 and of which they did not have constructive notice of record until July, 1913, a year or more after they made their purchases in 1912.

Marsee does not claim that he gave James or either of the other plaintiffs notice of his purchase at any time until long after the transactions were completed, when he wrote a letter, or some letters, to James and others informing them of his purchase in 1911. It is testified to, however, by two witnesses, Stamper and Davis, that they heard some kind of conversation between J. E. Golden and one of the Currys, in which something was said about a transaction between Golden and Marsee, but those witnesses are indefinite as to the time of that conversation and likewise indefinite as to its exact terms or even the substance of it, although they said that Golden said therein that he had sold either his interest or a part of it to Marsee. However, as we have already stated, no definite date was given by those witnesses as to when that conversation occurred. F. W. Golden testified that he was present with his father when the pur-

chase by plaintiffs was agreed to and that nothing was said by the latter with reference to the Marsee contract or concerning any interest he had in the lands purchased by plaintiffs. James and the Currys, not only positively deny any such conversations with either of them, but they further testify to facts and circumstances strongly corroborating their denial and which is also fortified by the subsequent actions and conduct of Marsee.

It also must not be overlooked that so far as this record discloses, plaintiffs are men of at least average business capacity, and it would be a strange piece of conduct on their part to purchase an interest in land and pay a substantial cash consideration therefor at the time, when they had been informed and possessed knowledge of the fact that another had already purchased the same property or an interest therein. After a careful review of the testimony in the light of the facts and circumstances in the record, we conclude that the chancellor was in error in holding that plaintiffs at the time they purchased had actual knowledge of any alleged interest of Marsee and that, as a necessary consequence, the judgment dismising plaintiff's claim to a one-half undivided interest in the properties involved, and adjudging that half interest to Marsee was and is erroneous, which conclusion we have reached from the standpoint that Marsee did obtain his written contract in 1911, although it is not in the record, and the only one therein between him and Golden was executed and recorded in 1913, as we have hereinbefore pointed out. The court in its judgment, which set out in detail its findings, did not hold that plaintiffs had notice of Hughes' contract when they made their purchase and, therefore, did not adjudge that they possessed actual knowledge of his mortgage on Golden's half interest in the contracts, nor do we find any proof in the record sufficient to establish such notice, and plaintiffs' acquired interest was, therefore, superior to any such lien in favor of Hughes.

Since we are unable to review the judgment as between Hughes and Marsee, for the reason hereinbefore stated, we withhold any judgment on the merits of that branch of the controversy, although the court found, which is abundantly supported by the testimony, that Marsee had notice of the claim of Hughes at the date of his alleged purchase. It also appears that Hughes, before this litigation, parted with his interest to others and which, it is strongly intimated, has finally become the

property of the Swift Coal and Timber Company. But, whether those matters are true or not, they are concluded by the judgment as between Hughes and Marsee, and which we are not permitted to review.

For the reasons stated the judgment is reversed on the original appeal with directions to adjudge plaintiffs a half undivided interest in the lands covered by their written contracts, and the cross-appeal of Marsee is dismissed without prejudice.