## Sturgeon's Administrator v. McCorkle.

(Decided February 18, 1915.)

### Appeal from Hart Circuit Court.

1. Contracts—To Devise Property to Give Legacy in Consideration of Services.—Compensation may be recovered by a party who has performed valuable services on the faith of a promise to devise property or give a legacy in consideration of the services performed. Such a contract is not within the Statute of Frauds as it may be performed within a year before the death of the promissor, nor does the statute of limitation begin to run unitl after the death of the promissor.

2. Judgment—Remittitur of Part of—Erroneous Instructions.—When the verdict supports part of the amount awarded but part is due to an erroneous instruction, this court may set aside the amount assessed under the erroneous instruction and sustain the amount properly awarded.

WATKINS & CARDEN for appellant.

McCANDLESS, LARIMORE & STRANGE for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

In a suit to settle the estate of J. A. Sturgeon, who died in 1912, the appellee, who was his daughter, presented a claim against his estate in the nature of an open account for $3,775, alleged to be due her for service in working for, waiting on, nursing and caring for her father for twenty-five years preceding his death, and

for $3,000, the alleged value of a one-sixth interest in the estate owned by him at his death.

The validity of this claim having been put in issue by the administrator, an issue out of chancery respecting it was submitted by the court to a jury, and upon a trial there was a verdict in favor of Mrs. McCorkle "for $750 for services, and a child's part, estimated at the sum of $2,500." On this verdict a judgment was entered in her favor against the administrator for $3,250, to be credited by an amount equal to one-sixth of the indebtedness against the estate, including in the indebtedness the $750 awarded by the jury.

The evidence shows that Johnson Sturgeon was married three times. His first wife, the mother of Mrs. McCorkle, died about 1866, leaving surviving as the only issue of the marriage one child, now Mrs. McCorkle. Some five years after the death of his first wife he married his second wife, who lived only a few years after the marriage, and died childless. In 1892 he married his last wife, who died in 1899, leaving surviving as the issue of the marriage five children.

Mrs. McCorkle lived with her father until her marriage in 1902, at which time she was about 38 years old. After her marriage she did not give any special care or attention to her father or render him any particular service for two years, or until 1904, but from that time until his death she was very faithful in her services and attention.

The evidence is practically undisputed that from the time Mrs. McCorkle reached her majority until her marriage, covering a period of about 17 years, she worked faithfully and continually for her father, not only in the house, but out in the field, performing all kinds of service. Many witnesses said she did all of the household work, the milking and the churning, and all kinds of work that is done on the farm except plowing; that she would drop corn, drop tobacco plants, hand tobacco on and off the wagon and hang it up in the barn, and shock wheat and rye; that she went to work as soon as Mr. Sturgeon did and worked as long as he did, and that was from about half-past three in the morning until nine in the night.

Other neighbors gave evidence as to her faithful services and attention to her father from 1904 until his death, this evidence showing that during the life of his

last wife she helped in the household affairs continually, and after her death assisted in taking care of the children.

All of these witnesses placed the value of her services from $150 to $175 a year for the first 17 years, and at something less than that amount for the last 8. So that we think it may fairly be said that the evidence fully establishes that a share in his estate equal to that received by the other children, or one-sixth, was not anything more than reasonable compensation for the services she rendered. But, for some reason unexplained in the record, her father, in his will made a few days before his death, gave of his estate to Mrs. McCorkle only the income on $500 for her life, the principal sum to be divided at her death between his five other children, to whom he gave the remainder of his estate, which was worth some $15,000 or more after the payment of debts.

In the instructions the court told the jury, in substance, that if they believed from the evidence that Mr. Sturgeon made a contract with his daughter that he would give her at his death a child's part of his estate, and in addition thereto the reasonable value of all services performed for him by her after she arrived at the age of twenty-one in consideration of her remaining with him and assisting him in the management of his household and in the work and labor upon his place, and further believed from the evidence that she performed these services, they should find for her and fix a recovery at such a sum of money as would be equal to one-sixth of the net value of the estate, and, in addition thereto, the reasonable value of her services after she became twenty-one.

The only substantial error in these instructions is that they allowed a recovery for the reasonable value of her services in addition to a child's part of the estate. After a careful consideration of all the evidence relating to the contract between Mr. Sturgeon and his daughter, we have reached the conclusion that there was sufficient evidence to warrant an instruction upon the subject of the daughter's right to recover, as stated in the instructions, "a child's part of his estate," but not sufficient to justify an instruction entitling Mrs. McCorkle to recover in addition to this the reasonable value of any services performed by her. But as the jury on an issue out of chancery specified the sum of $750 as the amount she was entitled to in addition to a child's part, so much of

the judgment as authorizes a recovery for this sum may be set aside and the balance of the judgment allowed to stand, and this, we think, under the law and evidence, is the right of this case. C. & O. Ry. Co. v. Meyers, 150 Ky., 841; Louisville Water Co. v. Scholtz, 140 Ky., 436.

It has been many times settled by this court that an action may be maintained and a recovery had in cases like this when there is evidence of a contract to devise property or give a legacy in consideration of services performed or to be performed, accompanied by evidence showing that the services were performed, but that the legacy was not given or the devise made. Thus, in Myles v. Myles, 6 Bush, 237, where the question was the right of a child to recover the value of services under a contract that his father would pay him a reasonable price for his services by making provision for him in his last will, the court said:

"Although it is a general principle that when one party performs services for another, under the expectation of receiving a legacy, without any definite agreement or understanding as to the nature and amount of the legacy, no absolute obligation is thereby created; yet it is equally well settled that compensation may be recovered by a party who has advanced money or performed valuable services in faith of a legacy, provided it is clearly proved that there was an absolute promise, upon such consideration, to leave the party a certain and definite legacy. * * * Nor was the contract within the interdiction of the statute of frauds, either as a contract for the sale of land or an agreement which was necessarily not to be performed within one year. The right of action in this case does not rest on any power to enforce a specific performance of the contract, for that is impossible; but it results from the non-performance of the agreement to compensate the appellee for his services by a special testamentary provision. And as the time of the performance of the contract might by the death of George Myles have been within one year, the agreement does not come within the provision of the statute relating to promises not to be performed within a year. Neither was the action barred by limitation, for the obvious reason that, according to the terms of the contract, no right of action could have accrued before the death of George Myles." To the same effect are: Reynolds

v. Reynolds, 92 Ky., 556; Bolling v. Bolling, 146 Ky., 313; Pittman v. Pittman, 22 Ky. L. R., 1751.

Wherefore, the judgment is reversed, with directions to enter a judgment for Mrs. McCorkle for $2,500, to be credited by an amount equal to one-sixth of the indebtedness of the estate, excluding the $2,500.