# Louisa Fields' Administrator v. Perry County State Bank.

(Decided March 19, 1926.)

## Appeal from Perry Circuit Court.

1. Bills and Notes—Valid Indorsement on Certificate of Deposit Held Sufficient to Pass Title to Holder.—Where bank issued deposit certificate with agreement to repay deposit and interest on return of such certificate properly indorsed, only question presenting itself on presentation of indorsed certificate was whether indorsement was actually made, since, if it was, it was sufficient to pass title to holder.

2. Bills and Notes—Bank's Certificate of Deposit Held Not Negotiable so as to Defeat, as Against Assignee Before Maturity and Without Notice, Defenses Available Between Original Parties (Ky. Stats., Sections 3720b-3720b-195).—Though banks' certificates of deposit are negotiable in sense that title may be transferred, they are not negotiable within meaning of Negotiable Instruments Act so as to defeat, as against assignee before maturity and without notice, defenses available between original parties, since they are not payable "to order" or "bearer."

3. Assignments—Assignee of Chose in Action May Maintain Suit Thereon in his own Name (Civil Code of Practice, sections 18, 19.)—Assignee of chose in action may maintain suit thereon in his own name, since by assignment he becomes vested with title and entitled to proceeds, in view of Civil Code of Practice, sections 18, 19, requiring action to be prosecuted in name of real party in interest, and recognizing right of assignee to maintain action.

4. Banks and Banking.—Where bank's certificate of deposit was properly indorsed, bank held not required to ascertain whether indorsement was fraudulently procured.

5. Executors and Administrators—Administrator, to Recover Amount of Deceased's Deposit from Bank, held Required to Prove that Deceased Never Indorsed Certificates or that Indorsement was Illegally Procured to Bank's Knowledge.—Where deceased indorsed certificates of deposit and delivered them to grandson, who cashed them, administrator, to recover amount thereof from bank, had burden to prove that deceased never indorsed certificates or that indorsement was illegally obtained with bank's knowledge.

6. Executors and Administrators.—Evidence held sufficient to support judgment for bank in action by administrator for amount of deceased's deposits which had been paid to holder of indorsed deposit certificates.

7. Bills and Notes.—Witnessed indorsement of certificates of deposit, made by depositor's mark, held sufficient to transfer title thereto.

8. Witnesses—Sister of Grantee of Deposit Certificates Held Competent Witness of Indorsement and Transfer thereof by Deceased Grantor, who Signed by Her Mark.—Where deceased indorsed de-

posit certificates by her mark, in presence of grandson and his sister, and delivered them to grandson, sister held competent witness to transaction.

9. **Banks and Banking.**—Neither depositor nor her administrator could question payment of properly indorsed certificates of deposit.

H. C. EVERSOLE for appellant.

J. W. CRAFT for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On August 24, 1917, Louisa Fields, who was then about 89 years of age, deposited with the appellee and defendant below, Perry County State Bank, $369.69, and took from it a time deposit certificate duly signed by its cashier, which, omitting date and signature, reads: "This certifies that Louisa Fields has deposited with this bank exactly three hundred sixty-nine dollars and sixty-nine cents, payable in current funds on or after six months after date on the return of this certificate properly endorsed with interest at the rate of 4% per cent per annum from date of this certificate. This bank may require 30 days' notice of the time when payment of this certificate will be required. Not subject to check." On December 1, the same year she deposited with the same bank $164.67. On September 20, 1918, she made another deposit of $352.51, and on August 6, 1920, she made one of $465.50, and at each time took exactly the same tenor of certificate with the exception of the amounts and dates. She had several children who were married and living to themselves, but she had reared from infancy a grandson and a granddaughter, both of whom were the children of a living son, Robert Fields. They lived with her as members of her family a great number of years and stayed at her house and assisted her in its management and in conducting her affairs a considerable portion of the time after they ceased to be members of her immediate family. On July 1, 1922, she became ill and from that time until her death, which occurred on December 10 the same year, she was confined to her bed. On August 21 before her death, according to the undisputed proof in the case, she endorsed in blank all four of the before mentioned certificates by writing her name on the back of each of them by making her mark, and each of those endorsements was witnessed by her grandson, Robert Fields, Jr., and by his sister, her granddaughter,

both of whom she had reared as above stated, and she then delivered each of them to the grandson, and said at the time that she had never given him anything for his many kindnesses toward her and services rendered by him and gave the certificates to him as an *inter vivos* gift. He presented them to the bank as so endorsed and witnessed, and it paid to him the face value of each, with interest at 4% from their respective dates.

The appellant and plaintiff below, Albert Williams, qualified as the administrator of Mrs. Fields, who died intestate, and he made demand on the bank for the amount of the certificates and interest, which it declined to pay, and he afterwards filed this action against it seeking judgment against it for the aggregate amount of all four of the certificates and alleged in his petition that his intestate "was an aged and decrepit woman and unable to get out and transact business of any kind until she died soon thereafter, and now avers that each and all of the transactions of said bank in diverting said sums of money from the credit of Louisa Fields and placing the same to the credit of Robert Fields, was without consideration paid her or with her knowledge or consent, and was illegal and void, and a fraud upon the right of Louisa Fields," and that on or about August 20 the above four deposit certificates "were taken by someone from her possession, as he is informed, and believes one, Robert Fields, Jr., who against the will and without the consent of Louisa Fields, either by stealth or trespass, and without consideration paid Louisa Fields, and against the will and without the consent of Louisa Fields, took the same from her possession and carried them to the Perry County State Bank, when on August 20, 1922, the Perry County State Bank then being operated by a president, cashier and directors, without any authority and against the will and consent of Louisa Fields, took and placed the four above mentioned sums of money, and the interest thereon from the dates of the deposits and sums above mentioned, to the credit of Robert Fields, Jr., and paid him the money for same," and that plaintiff's intestate did not learn of such facts before her death. A demurrer filed to the petition was overruled, and the answer denied the alleged grounds of recovery. The action was brought in equity and the proof was taken by depositions, and upon final submission the court dismissed the petition, to reverse which plaintiff prosecutes this appeal.

Counsel on both sides, as it appears to us, misconceives the applicable law of the case. Strenuous arguments are made by each of them of the question as to whether the certificates were or not negotiable paper at the time the bank paid them to Robert Fields. Counsel for plaintiff contends that they were not, while defendants' counsel contends to the contrary. But it is not pointed out to us, nor are we able to see wherein that question has any bearing upon the case. The certificates were not transferred to the bank who was their payor, but, at most, were only endorsed by the payee by endorsing her name in blank on the back thereof and were paid to the holder by the payor on presentation, which, as we interpret the certificates, was exactly in conformity with their express terms, since it is stated in each of them that they will be paid together with accumulated interest "on the return of this certificate properly endorsed." It was known by everyone that Mrs. Fields was illiterate and could not write and signed her name by mark. The certificates were so endorsed and duly witnessed, and the only question presenting itself to the bank, when their payment was demanded by the one holding them as so endorsed, was whether the endorsement was actually made. If it was, it was sufficient to pass title to the holder, as was held by us in the cases of Wettlaufer v. Baxter, 137 Ky. 362, and Ohio Valley Banking and Trust Company v. Great Southern Fire Insurance Company, 176 Ky. 694. The same cases as well as the later one of Haggard v. Mutual Oil and Refining Company, 204 Ky. 209, held that the certificates herein, while negotiable in the sense that the title to them might be transferred, were not negotiable paper within the contemplation of our Negotiable Instruments Act (section 3720b of our present statutes and its 196 subsections) so as to defeat as against an assignee, before maturity and without notice, defenses available between the original parties, since they were not payable "to order" or "bearer," but only to the depositor. It is the settled law and which was so held in the first two cases, *supra,* that an assignee of a chose in action may maintain suit thereon in his own name, since by the assignment he becomes vested with title and is entitled to the proceeds of the assigned chose, and which principle of law necessarily follows as a result of sections 18 and 19 of our Civil Code of Practice; the one requiring each action to be prosecuted in the name of the real party in interest, and the other one expressly

recognizing the right of the assignee to maintain the action. If, therefore, the *prima facie* assignee in this case (Robert Fields, Jr.), and the one to whom the bank made payment, could force it to do so by legal proceedings against it then it would necessarily follow that the bank would have the right to voluntarily pay him without being forced to do so by an action at law against it, and under such circumstances the only question that could affect its right to make the payment would be whether the assignment was genuine, *i. e.*, whether it was actually made and done by the assignor, the payee in the instrument, and was, therefore, not a forgery. If the assignment was so made, then the payor would not be required to ascertain whether or not it was fraudulently procured. The burden was, therefore, on plaintiff in this case to show either one of two things, *i. e.*, that Mrs. Fields never by mark or otherwise endorsed the certificates involved, or that if she did do so it was illegally obtained and the bank had knowledge thereof. It failed to prove either of those facts, as we have said. The witnessed endorsements on the certificates as made by mark, were sufficient to transfer title to the holder and to authorize a payment to him by the payor unless one or the other of the above facts existed. However, it was proven by the bank, not only that Mrs. Fields did endorse the certificates in the manner indicated, but that she at the same time delivered them after making such endorsement to her grandson, Robert Fields, accompanied with the declaration that she was thereby giving to him the sums represented by their face value plus accumulated interest. Both he and his sister testified to those facts, and if we should hold that for any reason his testimony was incompetent then the testimony of his sister, who was a competent witness, uncontradicted as it is in the record, was sufficient to establish those facts. The only counterproof to that testimony was the fact of Mrs. Fields' age and that at times her mind appeared to be abnormal, but it was admitted by the witnesses so testifying that at times she was fully possessed of her mental faculties, and that none of them was present or knew the condition of her mind *at the time* the endorsements were made and the certificates delivered to her grandson.

The court necessarily found that the decedent actually made the endorsements and delivered the certificates to her grandson, and that at the time she knew what she was doing; or it found that the *prima facie* case made

by the endorsement was not overcome by any proof introduced by plaintiff. We think the record affirmatively establishes both propositions, but whether so or not, the court correctly held that defendant under the proof in the record was legally authorized to pay the certificates to Robert Fields under the circumstances and conditions it did in this case, and that neither Mrs. Fields, if living, nor plaintiff as her administrator could question such payment under the proven facts as against the bank.

Wherefore, the judgment is affirmed.