In the Matter of the Estate of LOUIS F. SEIFRIED, Deceased.

Surrogate's Court, Oneida County, July 1, 1927.

**Executors and administrators — claim against estate — claim based on agreement of testator to give claimant grocery business and property on death of testator is supported by evidence — Statute of Frauds not applicable.**

The claimant has interposed a claim against the estate of the testator based on an alleged agreement that if the claimant, who had worked in the testator's grocery store for several years, would return to testator's employment the testator would give claimant the grocery business and the property on his death, is supported by a clear preponderance of the evidence.

The agreement does not come within the Statute of Frauds (Real Property Law, § 242; Personal Property Law, § 85), since it has been fully performed by the claimant and no interest or estate in the real property was created.

The claimant is not guilty of laches in that he did not seek to protect his rights in 1909 when the grocery business and property were sold for he had no rights under the agreement until the death of the testator.

CLAIM against estate.

Surrogate's Court, Oneida County, July, 1927.          [Vol. 130

*Charles G. Irish* [*Richard R. Martin* of counsel], for the executor.

*Fitzgerald & Smith*, for the claimant.

EVANS, S.  The decedent died on or about November 22, 1925, in the city of Utica, N. Y., where he had resided for many years. He left a will bearing date the 13th day of June, 1919, in which he disposed of an estate of about $80,000.  The testator left no widow and was childless.  He is survived by a brother and a niece in Germany and three nephews residing in Utica, who are the sons of a deceased sister of the testator.  These relatives constituted his heirs at law and next of kin.

The will was admitted to probate and by its terms the entire estate was willed to the First Presbyterian Society of Utica, N. Y., in trust to apply the income for the benefit of home and foreign missions.

The testator for many years owned and conducted a grocery store at the corner of Court and Huntington streets, in Utica, and in the year 1909 he sold the store and stock.  It is in connection with this grocery store that the matter under consideration arose.

Mr. Jacob Hansmann is one of the three nephews of the testator residing in Utica.  He has filed a claim against the estate for the sum of $6,000.  The claim was rejected by the executor and its validity was tried out on the judicial settlement.  The claimant is a man about fifty-four years of age and when he was fourteen years old he went to work for his uncle, the testator.  By computation this service began in the year 1887 and the claimant was paid $5 a week.  His duties began about seven o'clock in the morning and continued until nine or ten o'clock at night, six days in the week.  At first the claimant delivered orders and waited on customers.  When he became old enough to drive a horse his duties above mentioned were supplemented by work on Sunday in washing the wagon, cleaning the harness and putting the barn in order.  This work was followed later in the day by watering, feeding and bedding down the horse for the night.

As the years passed and claimant grew older and stronger, and with greater responsibilities, his wages were increased at different periods one dollar a week until when the claimant was married in 1893 he was receiving ten dollars per week.  He continued to work for his uncle until about June 1, 1902.  At this time the wages were twelve dollars per week and there were five persons in his family.  Claimant then went to work in the baggage room of the New York Central railroad at Utica, and in August of the same year received a promotion and was paid sixty-eight dollars per month.

On October 1, 1902, the claimant returned to the service of his uncle after resigning his position with the railroad company.  This

period of service continued seven years at a weekly compensation of fifteen dollars until the stock and store were sold in or about the month of October, 1909.

The circumstances under which the claimant discontinued his service with the railroad company and returned to work for his uncle form the basis of this claim.

The claimant has produced witnesses who testified that during the four months after the claimant ceased work in the grocery, the testator employed two or three men at different times. Three customers of the store related conversations had with the testator in which he said that Jake (meaning the claimant) was foolish to have left him. That business had dropped off since Jake left. Further that Jake was coming back and that he was going to stay as long as testator was in the grocery business and he (testator) was going to give Jake the store and stock when testator died. Some of the witnesses were acquainted with the testator for at least twenty-five years and in his store two or three times a day. One witness testified that the testator appeared pleased after claimant returned to work and said that he was glad and had promised Jake to give the store and stock if he would stay there so long as testator was in business. Or a witness who has resided in Utica sixty-nine years and now is and has been for thirty-three years an official of the New York State Department of Labor, lived at one time over the store in question. Access to the cellar was through the store so that the witness was frequently in and out of the store. This witness testified that in September, 1902, when claimant was working for the railroad company, he was in the store and that testator and claimant were there; that the testator said: " Now Jake, I have had a lot of trouble with other boys and men that I have had here, and I want you to come back to work for me, and I will pay you $15.00 a week and when I die, I will give you this grocery business and this property."

He testified further that the claimant agreed to return to work and remain so long as testator was in business and there was some talk about giving the claimant the value of the property in the event that the testator sold out prior to his death.

The claimant renewed work in the grocery in about two weeks and the witness lived in the building until after it was sold seven years later.

It appears that the three nephews of whom the claimant is one were friendly with the testator until the time of his death.

The value of the real property at the time of sale was $4,000, and the value of the stock was at least $2,000.

The executor introduced no evidence.

This in substance is the proof submitted to establish the claim.

Among the objections raised by the executor to the allowance of the claim is that the promise, if any, made by the testator is void for the reason that it was oral and not in writing.

Section 242 of the Real Property Law provides in substance that an estate or interest in real property cannot be created, granted, assigned, surrendered or declared unless by act or operation of law, or by a deed or conveyance in writing, subscribed by the person creating, granting, assigning, surrendering or declaring the same.

Section 85 of the Personal Property Law (added by Laws of 1911, chap. 571) requires that a contract for the sale of goods of the value of fifty dollars or upwards, shall not be enforcible by action, unless the buyer shall accept part of the goods contracted to be sold, or make part payment to bind the bargain, or unless some note or memorandum in writing of the contract or sale be signed by the party to be charged, or his agent in his behalf.

These legal requirements were in force in 1902 at the time of this transaction. The answer to this contention is that no interest or estate in the real property was created.

The testator parted with no rights in the real property and the claimant acquired none. There was no sale of the real and personal property and no agreement to sell. The testator retained absolute ownership of his property and exercised that right by selling it. The claimant under the alleged agreement was to take nothing until two events happened, viz., service by the claimant while the testator was engaged in business and the death of the testator.

The promise on the part of the testator did not contemplate the passing of title in the real property by deed, or of the personal property by bill of sale. Testator agreed to surrender nothing until after his death. An oral contract between mother and daughter by the terms of which the daughter agreed to return to her mother's house and care for her in consideration of the mother's promise that the daughter should receive her full distributive share of both real and personal property when the mother died, has been held good. (*Epps* v. *Price*, 230 N. Y. 542.)

It is contended on the part of the executor that the contract if made, by its terms was vague and that the true measure of damages is not the value of the store and stock.

The terms of the agreement appear to be simple. The claimant undertook to work for his uncle at fifteen dollars per week until he ceased business and on the death of the uncle the claimant was to receive the store and stock or its value. There is no law to compel the fulfillment of a promise to be incorporated in a will.

Numerous authorities hold that where the terms of a contract are violated by omitting to make the promised provision by will, that then the aggrieved party becomes a creditor of the estate for whatever damage he may be able to prove. (*Lane* v. *Calby,* 95 App. Div. 11; *Robinson* v. *Raynor,* 28 N. Y. 494.)

Cases in which recovery is allowed on a basis of reasonable value for services performed, govern a class where no specific contract is shown to have been made. .

The case at bar I think must be determined according to whether a contract was in fact made and the measure of damage growing out of the breach.

The suggestion that the claimant is guilty of laches in remaining passive and failing to assert his rights since the year 1909 when the store was sold is not available as a defense. The rights of the claimant did not mature until the testator died. (*Leahy* v. *Campbell,* 70 App. Div. 127; *Bair* v. *Hager,* 97 id. 358; *Chambers* v. *Boyd,* 116 id. 208; *GaNun* v. *Palmer,* 202 N. Y. 483.)

This brings us to the question as to whether a contract has been established by the proof submitted.

The courts are uniform in holding that in claims of this character the proof must be clear and convincing. Cases hold further that a claimant must show that the agreement is fair and equitable, and that its terms are definite and certain. (*Hamlin* v. *Stevens,* 177 N. Y. 39.)

In the last analysis however each case must be decided on its merits. There is no new or distinct rule of evidence governing claims against estates. In civil cases a plaintiff is never required to prove his case by more than a preponderance of evidence. This is as true of actions against an executor founded on claims put forward for the first time after the death of testator, as in other actions. (*Lewis* v. *Merritt,* 113 N. Y. 386; *McKeon* v. *Van Slyck,* 223 id. 392.)

It is a general rule that positive testimony of an unimpeached, uncontradicted witness cannot be disregarded by a court or jury arbitrarily or capriciously. (*Lomer* v. *Meeker,* 25 N. Y. 361.)

This rule is subject to the qualification that there may be a question of fact when all witnesses are worthy of belief and no witness contradicts another. (*Tousey* v. *Hastings,* 194 N. Y. 79.)

Also a court is not bound to adopt the statements of a witness simply for the reason that no other witness has denied them. The witness may be contradicted by circumstances as well as statements of others, contrary to his own, or there may be such a degree of improbability in his statements as to deprive them of credit, however positively made. (*Koehler* v. *Adler,* 78 N. Y. 287.)

Surrogate's Court, Oneida County, July, 1927.        [Vol 130

In the light of these rulings it becomes important to ascertain whether the evidence given by the witnesses is supported by the circumstances connected with this transaction. The four witnesses produced on the main issue are reputable and disinterested citizens of the city of Utica, all of whom had many years acquaintance with the testator and claimant. The claimant and his two brothers are life long residents and reputable citizens of the city of Utica. They represent as nephews the only ties of blood that the testator had in America. They sustained friendly relations with the testator up to the time of his death.

The claimant began work for the testator when a boy of fourteen and grew up with the business, and was familiar with its every detail.

He was a man about twenty-nine years of age and had a wife and three children before he sought to better himself financially by obtaining employment in the baggage room of the New York Central railroad.

It is reasonable to presume that fifteen years of service for the testator was satisfactory to the testator and that the claimant had become an important factor in the successful operation of the business.

There is the evidence of two or three clerks attempting to fill his place and of the loss of trade all in a period of four months.

It also appears that testator complained to customers about his business troubles and expressed regret that Jake had left him.

It requires no vivid imagination to picture the testator, weary and discouraged, in his futile efforts to obtain efficient employees and stop the downward course his trade was taking. His resolution to persuade his nephew to return to work at the store was natural and reasonable. There seems to be nothing improbable in the testator's promising the store and stock to Jake when testator died.

By reason of long service and the ties of blood according to usual standard, the claimant was a natural object of his bounty. The claimant was receiving sixty-eight dollars per month with reasonable expectation of increased salary. He resigned his position and returned to work for the testator for fifteen dollars per week. This fact in itself lends color and strength to the testimony as related by the witnesses. The claimant worked for testator seven years longer until the store and business were sold.

Applying the rule of caution and the tests necessary in claims of this character, I find that the claimant has established and proved his claim. There was full performance on the part of the claimant and a failure on the part of the testator.

The claim is, therefore, allowed at $6,000.

Decreed accordingly.