## Jordan's Adm'x et al. v. Burton.

Nov. 28, 1939.

310

Eldred E. Adams for appellants.

Clyde L. Miller and W. D. O'Neal for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Reversing in part and affirming in part.

The appellee, Raymond Burton, was left by his father with James Jordan and his wife, Elizabeth, in 1915. Raymond was approximately four and one-half years of age at that time. His father signed a statement in which he agreed that he would not take him away from the Jordans after he became old enough to work. Raymond was never adopted by the Jordans, though he sometimes went by the name of Jordan. He made his home with them and when he married sometime around 1930 they helped him set up housekeeping, and also gave him a horse and a cow. He lived in a house on the Jordan farm after he was married, with the exception of one year.

James Jordan died in 1935. He willed all of his property to his wife. She died intestate in 1937. The appellant, Iona Clay, a niece of the Jordans, was appointed as administratrix of the estate of Elizabeth Jordan. She filed this action to settle the estate. Burton was made a party defendant, having filed a claim for fodder and feed. According to his testimony this claim was for fodder and feed that he had raised on another farm and furnished to Elizabeth Jordan.

Burton filed an answer and counterclaim in which he alleged that the Jordans had entered into a contract with his father under which they agreed to leave him (Raymond) their property if he would live with them and help take care of them. Being unable to establish this writing he based his case upon the further plea that "during all of said time the said Jordans many times promised and agreed with this defendant (Burton) that if he would stay with them and do their work and take care of them and look after them, he should have their property on their death." He sought to recover damages for the breach of this alleged contract.

The Jordans owned a farm of approximately 100

acres on Little Cat Creek in Martin County. According to the proof, the farm was worth approximately $1,200. However, when it was sold to settle the estate it brought $2,135 in excess of an indebtedness of approximately $300 due the Federal Farm Mortgage Corporation. The proof shows that both of the Jordans had made statements that they intended to leave their property to Burton. Some of the witnesses testified that they had heard one or both of them say that Raymond had been promised the farm if he would stay with them and help do the farming and take care of them. There was also proof that the Jordans had made statements that they intended to leave their property to other parties. That Burton made his home with the Jordans most of the time and worked on the farm some is clearly demonstrated. There is some proof for the appellants, however, that he was lazy and that the Jordans had to help take care of him and his family after he married. Burton seems to have worked with the WPA for a while. Some of the appellant's witnesses said that he belonged to the "do less" class.

The chancellor adjudged a lien in favor of Burton in the sum of $600, which lien was to be inferior to that of the Federal Farm Mortgage Corporation. He also adjudged that the farm be sold to settle the estate. It can be seen, therefore, that, in view of the proof that the farm was worth approximately $1,200, the chancellor adjudged that Burton receive a sum which would approximate the amount remaining from the sale of the land after the satisfaction of the lien in favor of the Federal Farm Mortgage Corporation and the indebtedness against the estate.

In urging reversal the appellants insist that (1) the agreement relied upon by Burton comes within the statute of frauds; (2) such an agreement must be established by clear and convincing proof; (3) contracts to devise must be made before the commencement of service; (4) a mere statement of intention is not sufficient to establish a contract to devise; and (5) the inconsistent statements or conduct of a promisee is strong evidence that no contract to devise was made. Burton has filed a cross appeal in which he insists that the value of the farm is the true measure of damages and that he should have been allowed the remainder of the sale price of the farm after the satisfaction of the debts against the estate.

Thus we are confronted with a situation where one who, from his early years, had made his home with an elderly couple who had no children, is attempting to recover damages for the breach of an alleged oral contract under which he was to have the property of the elderly couple at their death conditioned upon his staying with them, caring for them and looking after their farm. As a general rule such contracts come within the statute of frauds (Section 470, Kentucky Statutes), and can not be enforced. Broughton v. Broughton, 203 Ky. 692, 262 S. W. 1089; Hinton v. Hinton's Executrix, 239 Ky. 664, 40 S. W. (2d) 296. But those cases point out that it has been held in a long line of cases that recovery may be had on parol contracts of the character before us where the consideration has been fully performed. Those cases point out also that the measure of recovery depends upon the service performed, and that, where the benefits to the deceased party can not be measured by the ordinary pecuniary standards, the courts will adopt the one fixed by the parties themselves and award the claimant the value of the property promised. It is obvious from what has been said that the case before us is one in which the measure of recovery, if any is to be had, is the value of the property promised. The indefinite period of the alleged contract, the general nature of the services said to have been performed, coupled with the compensating benefits coming to Burton as a member of the Jordan family prior to his marriage and to the Burton family thereafter, would make any other measure impractical. It follows, therefore, that if Burton made out his case and was entitled to anything, it was the remainder of the sale price of the property after the debts against the estate of Elizabeth Jordan were satisfied.

Even though it be conceded that there is some merit in Burton's claim, we are faced with another difficulty. The Broughton and Hinton cases, supra, and cases cited therein, stress the fact that it takes a high degree of proof to establish a contract such as we have before us. The proof must be clear and convincing, and must disclose a situation where good conscience and natural justice require the enforcement of the alleged contract. As to the character of proof required to substantiate such a claim it was said in the Broughton case, supra [203 Ky. 692, 262 S. W. 1091]:

"Such claims are thus upheld, but to be enforceable

they must clearly be founded on contract and established by convincing proof. So many opportunities are afforded for the spoliation of estates, it is so easy for unscrupulous persons to fabricate evidence after the death of the testator, and it is so hard to meet that character of proof, and a casual conversation, expression of intention, or invitation may so easily be misconstrued and distorted into an agreement, that in the absence of such a rule it would be dangerous for a person to exercise generosity or hospitality or to accept any sort of service of this character, without a thorough understanding that he was incurring no liability therefor. In the present case there is nothing in the record to show any fabrication of fact or attempted spoliation, and the above reference to those matters is only for the purpose of illustrating the reason for the rule, as it applies in all cases.''

As in the Broughton case, we find no fabrication of fact or attempted spoliation of the estate on the part of Burton, but we are of the opinion that the terms of the alleged contract have not been established with sufficient definiteness and certainty, when considered in the light of proof offered by Burton and the circumstances peculiar to this case. See Broughton v. Broughton, supra; Hinton v. Hinton's Ex'x, supra; Maloney v. Maloney, 258 Ky. 567, 80 S. W. (2d) 611; Adams' Adm'rs v. Adams, 264 Ky. 543, 95 S. W. (2d) 31; 69 A. L. R. 167; 106 A. L. R. 764.

Wherefore, for the reasons given herein, the judgment is reversed on the appeal and affirmed on the cross-appeal with directions to enter judgment in conformity with this opinion.