## Wides v. Wides' Ex'r et al.

Oct. 13, 1944.

R. P. Maloney and Joseph J. Bradley for appellant.

Stoll, Muir, Townsend, Park & Mohney, and Sam P. Strother, Finn & Orendorf, W. H. Hanratty, Linzy O. Thompson, and C. X. Johnson for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Reversing.

The question is interesting and novel in this jurisdiction. May a widow recover her statutory share in her husband's estate where he had made a contract before marriage to devise his entire estate to others, which contract became a judgment?

As a settlement of property rights in anticipation of a divorce, Morris Wides made a contract in June,

1937, to pay his then wife, Leah O. Wides, certain sums of money and personal property, and in addition:

"It is further understood and agreed by and between the parties hereto, and is a part of the consideration hereof, that in the event the party of the first part shall predecease the party of the second part then in that event the party of the second part shall share in the estate of the party of the first part with each of his children, share and share alike, and the party of the first part does hereby bind himself to make a will wherein he shall provide that his estate go to his children and the party of the second part equally, share and share alike."

The wife was granted a divorce and the terms of the agreement incorporated in the judgment. It is in part:

"It is further considered and adjudged by the Court, in accordance with the agreed order herein entered between the parties hereto, that the said Morris Wides shall, and he is hereby directed to, make a will wherein and whereby he shall provide that his estate shall go to his children, and the said Leah O. Wides equally, share and share alike, and, in accordance with said agreed order, the said Leah O. Wides shall share in the estate of the said Morris Wides with each of his children, share and share alike."

There is no record that Wides ever made such a will. About three years later he married again. Two days before his death, on July 28, 1943, Wides executed a will, which was probated. He bequeathed his second wife, Goldie Wides, their home for life, the furnishings absolutely, and $10,000, payable $2,000 a year, unless she should die before the entire amount was paid. All the "residue and remainder" of his estate he devised to his former wife, Leah Wides, and their four children, share and share alike. His estate was appraised in excess of $60,000. Mrs. Goldie Wides renounced the will and elected to take her statutory distributable share. Kentucky Revised Statutes 392.080. In the suit to settle the estate, she asked that such share be paid her, and Mrs. Leah Wides and her four children prayed that she be adjudged to have no interest in the estate, and, in effect, for the specific performance of the contract to devise and the judgment establishing it. The Chancellor was of the opinion that the second wife accepted her husband

in the status in which he was placed by the decree of divorce and the contract, or, as appellees' counsel say, a wife "takes him as she finds him, for richer, for poorer; for better, for worse." The court, therefore, adjudged that she was not entitled to any part of the estate.

The argument of the second wife, as appellant, is in its essence that one cannot contract against the law; that a contract to devise one's estate to others is not enforceable against a wife since the right to make a will is a privilege conferred by law, and the statutes insure a widow dower and a share in the personal property of her deceased husband; that a subsequent marriage revokes an existing will; and that she had no notice of this contract.

The argument of the appellees is, in brief, that the deceased had by the contract divested himself of all the remainder interest and equitable title in his property that he might have owned when he died; that the second wife never acquired dower rights in any of the property under the terms of KRS 392.040, providing in what land a surviving wife shall not have dower; and that this contract imposed a trust on all of the property which the decedent had at the time of his death.

The parties differ as to the effect of the judgment in the divorce case to give constructive notice of the condition of the husband's estate and as to the materiality of the second wife having such notice or knowledge of it when she married him.

In our quest for the right decision in the case, we need to consider the general current or stream of the law as declared in analogous or related cases. An agreement for a consideration to devise a share in or the entire estate is a valid and enforceable contract. The question has arisen in different classes of cases. One is where the father of an illegitimate child made such a contract with his mother for his benefit, as in Bowling v. Bowling's Adm'r 222 Ky. 396, 300 S. W. 876; Moore's Adm'r v. Wager's Adm'r, 243 Ky. 351, 48 S. W. 2d 15; and Hehr's Adm'r v. Hehr, 288 Ky. 580, 157 S. W. 2d 111. Another class is where one is to take care of the promisor or serve him as long as she shall live or indefinitely, as in Sturgeon's Adm'r v. McCorkle, 163 Ky. 8, 173 S. W. 149, and Jordan's Adm'x v. Burton, 281 Ky. 309, 135 S. W. 2d 684, and cases cited therein. In both classes of cases we have treated the default by the promisor

as a breach of contract and the remedy of the promisee or beneficiary to be at law to recover damages, the measure of which is the value of the property since it was that fixed by the parties. However, in the latter class of cases, if the value of the services can be established with reasonable definiteness, quantum meruit is the measure of recovery. Ecton's Ex'rs v. Vinegar, 225 Ky. 15, 7 S. W. 2d 487; Deboe v. Brown, 231 Ky. 682, 22 S. W. 2d 111; Sneed's Ex'r v. Smith, 255 Ky. 132, 72 S. W. 2d 1028; Jordan's Adm'x v. Burton, supra; Rudd v. Planters Bank & Trust Co., 283 Ky. 351, 141 S. W. 2d 299. It may be observed that in these cases the denial of specific performance has been where there was a parol contract with respect to land or a contract to bequeath property, whereas in the instant case we have a written contract relating to both species of property. Another class of cases is where there was a contract to devise the estate to one who as a child had, in effect, been given to the promisors. We have held the remedy is damages equal to the value of the estate. Small's Adm'r v. Peters, 233 Ky. 576, 26 S. W. 2d 491. The case of Skinner v. Rasche, 165 Ky. 108, 176 S. W. 942, is of that kind, but the failure of the devise was due to improper execution of the will. We expressed the opinion that the beneficiary of the contract could elect whether to pursue the remedy of seeking compensation for a breach of contract or of enforcing a trust with which the property had been impressed. We held the property should have been declared to be the claimant's by virtue of the contract. Like that in principle is the recent case of Farmers Nat. Bank of Danville v. Young, 297 Ky. 95, 179 S. W. 2d 229, in which we held that property received by a widow from her husband's estate under a contract of compromise of a will contest, in which she agreed to devise the property to his children, was impressed with a trust which she had to respect. No innocent party was concerned. Her attempt to dispose of the property by a testamentary deed of trust was held to be ineffectual.

In none of the cases was the right of a widow in issue. The question was raised by the litigants as an academic one in Hehr's Adm'r v. Hehr, supra. But in Price v. Aylor, 258 Ky. 1, 79, S. W. 2d 350, the right of a second wife was in issue. A husband and wife had made a joint will devising to the survivor each other's estate for life and the residuary of both estates to certain nephews. The wife died and the will was probated. He

later married and deeded a part of the property to his second wife and executed a will devising all of the property to her. When he had died, the respective parties claimed the estate to the exclusion of the others. We held that in accepting the benefits of the joint will the husband had, in effect, placed his own individual estate within its terms and that both his and the first wife's property passed under the joint will to the nephews to the exclusion of the second wife. Her statutory right of dower does not appear to have been raised, but in any event the will containing the trust provision constituted constructive notice of the trust estate.

Thus it is deducible from these opinions that where there is no question as to the completeness of performance or compliance with the agreement by the promisee or beneficiary, or if the full measure of damages cannot be ascertained by ordinary pecuniary standards, the court holds in effect, although not so explicitly stated, that the promisor has received or has held his estate with a contractual trust fixed upon it, and the promisee or beneficiary is entitled to the specific property or to its equivalent in money. Where damage is the relief, it is upon the idea that that is an adequate remedy at law so that equity will not take hold. Nevertheless, in reality it is the recognition of a trust upon property owned at the death of the promisor and the enforcement of that trust. Although anomalously spoken of as specific performance, the remedy is not technically such. It is equivalent relief in the nature of specific performance since there is obviously no attempt to compel the promisor to make a will, he being dead. Page on Wills, Third Edition, Sec. 1736; Alexander on Wills, Sec. 146; Annotations, 69 A. L. R. 746. However, as is well stated in a note on 69 A. L. R. 28:

"The courts will construe such an agreement to bind the property of the testator or intestate, so far as to fasten a trust on it in favor of the promisee, and it will enforce such trust against the heirs and personal representatives of the deceased or others holding under them, charged with notice of the trust. It is in the nature of a covenant to stand seized to the use of the promisee, as if the promisor had agreed to retain a life estate in the property, with remainder to the promisee, in event the promisor owned it at the time of his death, but with full power on the part of the promisor to make any bona

fide disposition of it during his life to another, otherwise than by will."

The present case obviously is one in which the recompense or substituted satisfaction of the consideration which supported the unexecuted promise cannot be measured by ordinary pecuniary standards or otherwise than by the estate or property itself. Were that all, there would be no difficulty in holding that the remedy is for breach of contract. But this contract became a judgment in a divorce suit and the right to have it enforced and the power of the court to enforce it is in equity. The parties have so practiced the case. Granting either of the two recognized remedies—recovery in damages or specific performance—the first wife and her children are entitled only to the net estate. No claim would, of course, be made that the decedent's debts and cost of administration should not be first deducted nor that any lien existing upon the property should not be recognized. Should dower rights of a widow who had no notice or knowledge of the contract be regarded in equity as an obligation of less degree? The policy of the law as expressed in several statutes answers the question in the negative. There is the statute, KRS 392.020, creating a dowerable estate for the surviving widow by providing that she shall have an estate for her life in one-third of all the real estate of which her husband was seized in fee simple during coverture and an absolute estate in one-half of the surplus personalty left by the decedent. The husband may not by will defeat the statutory right, for the widow may renounce the will. KRS 392.080. There is the statute nullifying a previously executed will upon marriage. KRS 394.090. The widow's right of dower is an individual interest in her husband's property and not merely a lien and can be released only where she pursues the law in that regard. Wigginton v. Leech's Adm'x, 285 Ky. 787, 149 S. W. 2d 531. See also Maynard's Adm'r v. Maynard, 285 Ky. 75, 146 S. W. 2d 343, as to "jointure." As was cryptically stated in Rowe v. Ratliff, 268 Ky. 217, 104 S. W. 2d 437, 439: "The only way that the wife can lose her dower is either to sell it, forfeit it, or die and leave it." Of course, this pre-supposes that she had the inchoate right of dower in the specific property and that the condition of the title was not within the purview of KRS 392.040, defining the class or condition of lands in which a wife does not acquire dower right.

We may here express the view that except as a limitation on the policy or a clarification of the dower statutes that statute (392.040) has no application. It declares that the wife shall not have dower in land sold but not conveyed by the husband before marriage, nor land sold in good faith after marriage to satisfy an encumbrance created before marriage, or by a deed in which she joined, or to satisfy a lien for purchase money, nor in land held by the husband under executory contract only unless he owned such an equitable right at the time of his death. See Smallridge v. Hazlett, 112 Ky. 841, 66 S. W. 1043. There is no contract of sale involved, or deed as in Hounshell v. Hounshell, 232 Ky. 532, 23 S. W. 2d 959, and although this statute is construed to embrace property actually held by the husband as trustee but not disclosed to be such (Gully v. Ray, 18 Ky. 107, 18 B. Mon. 107), the present trust is a peculiar one, as we shall see in considering the equities of the case.

Nor does it seem to us that KRS 394.090 declaring that every will shall be revoked by the marriage of the person who made the will to be applicable except as an expression of policy in regard to the protection of the wife's property rights. It is the contract with which we have to deal. If Wides had made a will in accordance with that contract and judgment and it should be held to have been revoked by his subsequent marriage to the appellant, we would be at the same starting point, namely, the question of whether the contract is enforceable to the exclusion of the widow's statutory rights.

In all cases of specific enforcement of contracts of this class, the question of good conscience and natural justice is presented. When it appears that enforcement would be unfair, inequitable or unjust to either party or to innocent third persons, the remedy of specific performance will be denied. Alexander on Wills, Secs. 87, 146; Owens v. McNally, 113 Cal. 444, 45 P. 710, 33 L. R. A. 369; Annotations, 69 A. L. R. 67.

In Dillon v. Gray, 87 Kan. 129, 123 P. 878, the right of a widow to recover her distributable share in an estate was denied. The promise was made by a man 69 years old to his daughter and her husband that if they would leave their home in Alabama and come to Kansas and take care of him and her mother as long as they lived he would give them his farm. They performed their con-

tract fully and at considerable sacrifice. The mother died and the father married again when 78 years old. He then made a will devising substantially all of his estate to others than his daughter and her husband. The decision recognized the principle above outlined, and, although it appeared that the widow had had knowledge of the contract, that fact was regarded as immaterial, the conditions and circumstances of the whole case making it equitable to give the daughter and her husband the specific property to the exclusion of the second wife. In Smith v. Smith, 340 Ill. 34, 172 N. E. 32, a second wife was denied her interest as a widow where there was a recorded agreement made three years before her marriage that the husband in consideration of his children having conveyed to him all their interests in their mother's property for a nominal sum would convey all of his property in his lifetime or devise it to them in equal shares. The court also found no equities in favor of the widow.

On the other hand the decision was the converse in Owens v. McNally, supra, where there was a similar contract by an uncle with his niece which was uncertain and indefinite in its terms and the circumstances and conditions quite different. The California court held that specific performance would be harsh and oppressive upon a wife who had subsequently married the uncle without knowing anything about the contract until after his death. Pointing out the special favor in which marriage and the family relation is viewed by law, the court said (113 Cal. 444, 45 P. 713):

"A specific performance of this contract cannot, therefore, be decreed without sweeping aside, as of no moment or avail, the rights of the wife and widow, vested under a contract most strongly favored by the law. Specific performance, as we have said, is not to be decreed under strict rule and formula. Every consideration which may properly be urged upon the court is to be weighed and passed upon, and it will be decreed only when no other adequate relief is available to plaintiff, and even then it will be denied if it operates by way of a hardship upon the innocent. So, while this contract was not void, as against public policy, at the time it was entered into, it must be held that the parties to it contracted in view of the fact that a subsequent marriage by Lawrence McNally might be consummated, and that

112

the effect of this marriage would be to compel a court of equity, in justice to the widow or children, to deny specific performance. Or, viewed in another way, it must have been within the contemplation of the parties that Lawrence McNally might marry; for the contract could not have been designed as a restraint upon his marriage, or it would be void. If it was within their contemplation, and the contract embraced the taking of the deceased's entire estate to the exclusion of any future wife or child, then we have no hesitation in saying that the contract was void as against public policy. The only permissible conclusion is, therefore, that the parties contracted in contemplation of that event. Upon its happening the rights of innocent third parties intervened, and a decree of specific performance could not be awarded.''

In Arland v. Arland, 131 Wash. 297, 230 P. 157, 158, a husband and wife entered into a contract wherein they agreed to convey all of their property to each other, with the provision that the title was to vest in the survivor and that the survivor immediately upon the death of the other would make a will leaving all of the property to their children. The wife died not long thereafter and four years later the husband remarried. The second wife survived him. The husband had not made the will as provided in the contract with his first wife, but devised one-third of his estate to the second wife. The court held that the contract to devise did not affect the surviving widow's right in and to the estate of her husband, saying:

''While there are many equities in favor of the appellants, we think they are overcome by the greater equities of the respondent (the widow). She married Mr. Arland in entire ignorance of the contract between him and his deceased wife. She lived with him for six years and cared for him during his old age. In so doing she must have relieved the appellants of many duties which otherwise would have been imposed upon them. In a sense her equities are based on an actual consideration, while theirs are based on the right of heirship. She obtains only one-third of his estate. The appellants obtain all that portion which formerly belonged to their mother and some in addition thereto. If the contract did not exist, no one would think of denying that an equitable division had been made. Under our statute, section 1399,

Rem. Comp. Stat., if Mr. Arland had made the will provided for in the contract, it would have been avoided by his marriage to the respondent. His widow is his heir as well as the children, for the statute provides that in the event one die intestate leaving a wife and children one-third of his estate shall go to his wife. Section 1341, Rem. Comp. Stat. If the respondent had been an innocent purchaser for value of all the property in question, and not the widow, courts of equity would not, for a moment, think of enforcing the contract against her. While in an ordinary sense she is not a purchaser, in an equitable sense she is in as favorable a position as if she were such. It is quite true that as between the appellants and their father or as between him and his deceased wife the contract would unquestionably be enforced, but that situation would not take into consideration the equities of the respondent.''

That case is like Price v. Aylor, 258 Ky. 1, 79 S. W. 2d 350, supra. See also Gall v. Gall, 64 Hun 600, 19 N. Y. S. 332, affirmed in 138 N. Y. 675, 34 N. E. 515, which is distinguished in Hehr's Adm'r v. Hehr, 288 Ky. 580, 157 S. W. 2d 111, supra. There are other cases, like Davier v. Kaiser, 280 Ill. 334, 117 N. E. 420, decided upon insufficient proof of a contract to devise.

As to notice or knowledge of the appellant of the contract embodied in the judgment: The appellees submit that the judgment gave notice and that it was her duty to investigate the marital status of the man she was expecting to marry to be sure that he was divorced. It is familiar law that constructive notice is charged against a party in two ways. One is the conclusive notice of instruments properly recorded in the office of a county court clerk, and the other is the implication of the law arising from negligent failure to ascertain any given situation. The judgment cannot be considered in the category of recorded instruments and knowledge of it is not chargeable against anyone not a party to the litigation. Nor do we think the circumstances show any negligence on the part of the second wife to investigate the judgment record in the circuit court for some unusual provision affecting her husband's property rights. The statutes fixed her rights.

We do not express an opinion as to the proper decision in a case like this where the party adversely affected by such a contract has knowledge of its existence,

114

actual or constructive. We are of opinion, however, that the innocence of the wife under the present circumstances is a material consideration in weighing the equities, of the case.

The husband had sought to be fair to all. He devised only a reasonable part of his estate to his second wife and the balance to his divorced wife and children equally as provided in his separation agreement or contract. Our conclusion is that to adjudge recovery of the entire estate or its equivalent in money to them to the exclusion of the second wife's statutory rights would be inequitable and contrary to the spirit and intent of the statutes reflecting the public policy of the State. She is entitled to her dower and distributable share.

The chancellor having adjudged otherwise, the judgment is reversed.