### FINN v. FINN'S ADM'R et al.

Court of Appeals of Kentucky.
April 27, 1951.

As Modified on Denial of Rehearing
Dec. 21, 1951.

**436**

Henry I. Fox, Louisville, for appellant.
Bader & Maratta, L. G. Bradbury, and J. W. Jones, all of Louisville, for appellees.

Henry I. Fox, Louisville, for appellant.
Bader & Maratta, L. G. Bradbury, and
J. W. Jones, all of Louisville, for appellees.

STANLEY, Commissioner.

The judgment is that there was no contract by Mrs. Katie Finn, deceased, to devise her estate to Miss Rose Finn in consideration that she board and care for her needs during the rest of her life and pay the expenses of her burial.

Mrs. Finn was the widow of the brother of Misses Rose and Bridget Finn. She was a native of Louisville but had lived in Chicago about twenty years. Since the death of her husband, Mike Finn, about eight years before, she had operated a rooming or boarding house. She had no children or close relatives. In fact, she had stated that she only had a cousin and her husband but both were dead. The warning order attorney in this suit to settle the estate could find no heirs. Eight months after the present judgment, 28 distant cousins were located and came in.

Mrs. Katie Finn was 72 years old, Miss Rose was 62, and Miss Bridget 74. Rose worked at the city general hospital and Bridget looked after their home. These ladies had always been congenial and friendly. The deceased and Bridget had gone to school together. A few weeks before June, 1948, Mrs. Finn wrote Bridget, asking if she could come and make her home with them. She wrote her to come, saying, "our doors were all open." Mrs. Finn sold her property in Chicago and had a bank deposit of $5,529 and postal savings certificates of $400. She came to Louisville to live with her sisters-in-law on June 16, 1948, and died suddenly on June 30, 1948. During this brief period Mrs. Finn lived with them in their cottage and enjoyed all their care and comforts. She suffered with heart trouble. The court sustained exceptions to the testimony of Miss Rose Finn as to transactions with the decedent, Sec. 606, Civil Code of Practice, but the competency of Bridget's testimony is not questioned. Fields' Adm'r v. Perry County State Bank, 214 Ky. 24, 282 S.W. 555. Concerning the agreement, we briefly summarize her evidence. A few days after Mrs. Finn came into their home, at the supper table she and Rose agreed that the latter would give her a home, take care of her as long as she lived and provide her

with all the things she needed, and Katie would make a will leaving all her property to Rose. Being pressed upon cross-examination for the exact language used, Bridget quoted it as being, "Rosie, take care of me and then after I am gone I will will you my money." Mrs. Finn turned her savings certificates and bank book over to Rose and suggested that if she would leave the money there she would get $100 interest on it. The reason Bridget was not a party to the agreement was that she was in poor health, was much older than Rosie who would probably live longer. Specifically, "I told her I just didn't want it. She knew Rosie would take care of me and that was all about it."

The reason why a will had not been made was related by Rosie, but, as stated, exceptions were sustained to her testimony, and it was excluded.

 In Wides v. Wides' Ex'r, 299 Ky. 103, 184 S.W.2d 579, we took note of the several classes of cases where there was a contract to devise a share or the entire estate of a deceased person, including a contract whereby one agreed to take care of the promisor as long as he lived. We have a long line of decisions that an oral agreement based upon an adequate consideration is valid and enforceable. This is based upon the recognition that, generally speaking, a person is just as free to contract to leave his property to a particular person by will as he is to contract to sell it to such person. Sturgeon's Adm'r v. McCorkle, 163 Ky. 8, 173 S.W. 149.

 The appellee relies on Maloney v. Maloney, 258 Ky. 567, 80 S.W.2d 611, in which it is held that an oral agreement to execute mutual wills is unenforceable in relation to real estate by the Statute of Frauds, now KRS 371.010(6), and in relation to personal property by what is now KRS 361.040, a part of the Uniform Sales Act. That section makes unenforceable a contract to sell or a sale of "any goods or choses in action of the value of five hundred dollars or upwards" unless certain things shall have been done. A reconsideration of that case leads us to the conclusion that it is erroneous in this particular.

We do not think such a transaction as that, or such a contract as is claimed and proven in the instant case, comes within the meaning of a sale as defined by KRS 361.010 or within the purview of the Uniform Sales Act. The Uniform Sales Act is not applicable where the transaction is but the creation of a debtor-creditor relation. Libaire v. Feinstein, 133 Misc. 27, 231 N.Y.S. 3. We cannot conceive a contract to provide a home for another as the sale of "goods or choses in action." Conversely, as said in Exchange National Bank of Tampa v. Bryan, 122 Fla. 479, 165 So. 685, 686, to uphold the theory that one who agrees to maintain another occupies the position of buyer and the other party who promised to make a money provision in his will occupies the position of a seller "would destroy and throw into confusion the law of sales contracts in this state." The Act has also been held inapplicable to a claim of a contract to bequeath personal property in consideration of services rendered. Matter of Seifried, 130 Misc. 229, 224 N.Y.S. 275. Accordingly, Maloney v. Maloney, supra, 258 Ky. 567, 80 S.W.2d 611, is overruled to the extent indicated.

 A claim brought forward after death of an agreement to distribute the decedent's estate in a different way from that provided by law is regarded with some suspicion, particularly where there is no writing evidencing it. Broughton v. Broughton, 203 Ky. 692, 262 S.W. 1089. The courts do not lose sight of the difficulties under which the representatives of the dead labor. At the same time, we should not lose sight of the difficulties which the law raises against the living claimant. It is well settled, however, that proof of an oral contract of this kind is weighed carefully. It must be clear and certain that there was in fact an agreement, positively definite and mutually understood. Skinner v. Rasche, 165 Ky. 108, 176 S.W. 942; Broughton v. Broughton, 203 Ky. 692, 262 S.W. 1089; Jordan's Adm'x v. Burton, 281 Ky. 309, 135 S.W. 2d 684. In determining whether such contract was made, the weakness or the strength of the direct evidence often depends upon the circumstances. The ele-

ment of reasonable probabilities must enter into the solution. Whether the claimed contract accords with what is natural or unnatural in common experiences and observations is perhaps of most importance. But this rule of clear proof does not require the exclusion of any controversy. In the present case there is no controversy. The testimony of Bridget stands undenied and unchallenged

■ The circumstantial evidence supports this direct uncontradicted testimony. The claimed agreement is very reasonable and a natural one. It is natural that a lonely old lady would want to return to her native home for her remaining years. It is natural that she should want to live with the sisters of her deceased husband, who were also her lifetime friends. It is likely that her estate came from their brother. She had no other kinfolks as she believed. Certainly there were no close ones or anyone else who cared for her or to whom she was under any moral or legal obligation except the very weak tie of remote blood.

■ Once it is found that there was in fact a contract of the nature claimed, the question of remedy arises. Where, because of the character of service or other consideration for the promise, it is impractical to measure the benefits to the deceased party by ordinary pecuniary standards, the measure fixed by the parties themselves will be accepted and adjudged. Sneed's Ex'r v. Smith, 255 Ky. 132, 72 S.W.2d 1028; Jordan's Adm'x v. Burton, 281 Ky. 309, 135 S.W.2d 684, 685. For all practical purposes, this is the remedy of specific performance, although it is not technically so, for the court cannot make a will for a dead person. The effect is the same as a judgment for damages in a suit at law for breach of contract based upon the value of the property which was promised rather than based upon quantum meruit.

Mrs. Finn did not contract merely to pay for her board and care by the week or other definite period. It was for a home during the remainder of her life. Companionship was undoubtedly what she wanted and what she received. It was more than mere board and keep. That cannot be adequately measured by a dollars and cents computation. Jefferson v. Simpson, 83 W.Va. 274, 98 S.E. 212.

The reciprocal obligations assumed when the contract was made are the determinative factors rather than how long their performance might have been lengthened out in time or the fact that the fortuitous circumstance of the early death of one of the parties results in something of a windfall for the other. Rose did everything upon which Katie's agreement was conditioned. Mrs. Finn was already a partial invalid and the agreement must be regarded as contemplating that unusual care and patience which the comfort and demands of an infirm old lady usually require. Had she lived any substantial length of time, the care and burden might have been great and even the relatively large sum have proved inadequate compensation. This was a chance both parties entered upon.

The right to a decree equivalent to specific performance is dependent upon the equities of the particular case. One of the important matters for inquiry is whether at the time the deceased promisor entered into the contract or at the time of his death he had relatives who were dependent upon him or to whom he owed any legal or moral duty to care and provide for out of his estate. If there are such persons to whom the promisor has a legal or moral obligation, and recovery for breach of the contract can be reasonably measured otherwise that measure will be adopted. If there is no inequity or invasion or disregard of the rights of others to whom there is such obligation, the promisee has the right to the protection and aid of the court in enforcing the contract and to recover the compensation expressly promised him, namely, the property left by the deceased after satisfaction of debts and burial expenses. Notes, 69 A.L.R. 69–83. As stated, the decedent in the present case had only some remote collateral relatives who were complete strangers and who were located long after she was dead and gone.

The claimant came into the suit in equity to settle Mrs. Finn's estate and sought judgment on the contract against the ad-

ministrator for the full amount of the net estate. This was her election. Cf. Skinner v. Rasche, 165 Ky. 108, 176 S.W. 942. There was no pleading seeking to have her adjudged entitled only to the value of the services rendered the deceased. The sole issue was the existence of the contract pleaded, the administrator apparently conceding that Rose was entitled to all if the contract should be established. This was fair, just and equitable.

We are of opinion, therefore, the chancellor should have found there was a contract and allowed the claim as prayed.

Judgment reversed.